Filed 7/15/14; pub. order 7/31/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ORTHOPEDIC SPECIALISTS OF SOUTHERN CALIFORNIA, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, <br><br>     Defendant and Respondent. | B248535 <br><br> (Los Angeles County <br> Super. Ct. No. BC486953) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

    Law Offices of Gray L. Tysch, Gary L. Tysch; Snyder ♦ Dorenfeld, David K. Dorenfeld and Michael W. Brown for Plaintiff and Appellant.

    Steptoe & Johnson, Edward Gregory and Jason Levin for Defendant and Respondent.

_____

Appellant Orthopedic Specialists of Southern California (OSSC) provided nonemergency medical services to a participant of a health plan covered by defendant California Public Employees' Retirement System (CalPERS). OSSC is an out-of-network medical provider. CalPERS paid OSSC a small portion of the amount charged for services. OSSC insists that it is entitled to receive its higher customary and usual rate and seeks the balance of $297.46, plus damages for a putative class. The trial court sustained CalPERS's demurrer without leave to amend. Because we agree with the trial court that there is no contractual or other requirement that CalPERS pay OSSC its usual and customary rate, we affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

**CalPERS, the PERS Choice Health Plan, the Evidence of Coverage**

CalPERS is a unit of the Government Operations Agency. (Gov. Code, § 20002.) In addition to administering the retirement system for employees of California and other public entities, CalPERS operates health insurance plans, including the PERS Choice health plan. It does so through contracts with third party administrators, including Anthem Blue Cross (Anthem). (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1598–1599.) A separate contract—the Evidence of Coverage (EOC)—exists between CalPERS and individual health plan members, and governs a health plan's obligations to its members and their dependents. (*Id.* at p. 1603; see also *Watanabe v. California Physicians' Service* (2008) 169 Cal.App.4th 56, 67.) The EOC's contents are regulated by the Department of Managed Health Care. (Cal. Code Regs., tit. 28, § 1300.63.1.)

**Allegations of the First Amended Complaint (FAC)**

In August 2011, OSSC, an out-of-network provider, provided nonemergency medical services to a member of the PERS Choice health plan, who had signed an Assignment of Benefits allowing OSSC to be paid directly by CalPERS. Before treating the member, OSSC contacted CalPERS, through Anthem, and was informed that the member was "insured, covered and eligible," and that OSSC "would be paid" for performance of services. OSSC "was led to believe that it would be paid either its total

2

billed charges or the usual, customary and reasonable value of its total charges." CalPERS ultimately paid OSSC an amount "far below [its] billed charges."

The Government Claims Form, attached to the FAC, shows that OSSC determined that $390 was the usual, customary and reasonable rate for the services it provided. But OSSC charged CalPERS $650, of which CalPERS paid $92.54. OSSC seeks the balance of $297.46 ($390 minus $92.54).

The class allegations of the FAC state that OSSC is seeking damages on behalf of a class of about 5,000 other out-of-network service providers to PERS Choice members who received less than "the usual, customary or reasonable rates for the services they provided."

The FAC alleges nine causes of action for (1) "recovery of payment for services rendered," (2) open book account, (3) quantum meruit, (4) breach of implied-in-fact contract, (5) declaratory relief, (6) breach of oral contract, (7) "estoppel," (8) statutory violations, and (9) negligence per se.

**The PERS Choice EOC**

The PERS Choice EOC attached to the FAC provides that covered services provided by an out-of-network or nonpreferred provider are paid at 60 percent of the "Allowable Amount," and the EOC repeatedly states that plan members are responsible for the remaining 40 percent and for all charges in excess of the Allowable Amount, plus all charges for noncovered services. The Allowable Amount is defined as the lesser of:

"1. the amount that Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan has determined is an appropriate payment for the service(s) rendered in the provider's geographic area, based on such factors as the Plan's evaluation of the value of the service(s) relative to the value of other services, market considerations, and provider charge patterns; or

"2. such other amount as the Preferred Provider and Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan have agreed will be accepted as payment for the service(s) rendered; or

3

"3. if an amount is not determined as described in either (1) or (2) above, the amount that Anthem Blue Cross or the local Blue Cross and/or Blue Shield Plan determines is appropriate considering the particular circumstances and the services rendered."

**The Demurrer and Ruling**

CalPERS filed a demurrer to the FAC, arguing that the express contractual provisions of the EOC did not obligate it to pay an out-of-network provider the provider's usual and customary rates. The trial court agreed and sustained the demurrer without leave to amend. The court found that each cause of action failed because it conflicted with the EOC, that OSSC's implied and equitable contract theories could not be asserted against a government agency, and that the action was not amenable to class treatment. The court entered a judgment of dismissal and this appeal followed.

**DISCUSSION**

**I. Standard of Review**

"A demurrer tests the legal sufficiency of the complaint; we review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. [Citation.] If facts in exhibits attached to the complaint contradict the facts alleged, the facts in the exhibits take precedence. [Citation.]" (*Mintz v. Blue Cross of California*, *supra*, 172 Cal.App.4th at p. 1603.)

**II. The Demurrer Was Properly Sustained Without Leave to Amend**

OSSC acknowledges that the issue of payment for nonemergency services provided by out-of-network providers is governed by the EOC. (Cal. Code Regs., tit. 28, § 1300.71(a)(3)(C) ["For non-emergency services provided by non-contracted providers to PPO and POS enrollee's: the amount set forth in the enrollee's Evidence of Coverage"].) The EOC clearly states that an out-of-network provider will be paid 60 percent of the Allowable Amount, which is broadly defined as the amount Anthem "has determined is an appropriate payment" for the services rendered.

4

OSSC does not focus on this provision; rather, OSSC takes the position that the EOC should require payment of the usual, customary and reasonable rate charged by an out-of-network provider for nonemergency services. OSSC asserts that if this is not the case, then Anthem can essentially pay a provider whatever amount it deems appropriate and the provider is left without any recourse. There are two responses.

First, it is correct that the EOC allows Anthem itself to determine what is an appropriate amount to pay an out-of-network provider for nonemergency services. But just because OSSC believes that the EOC's provisions are unfair does not mean the provisions can be ignored or that they are unenforceable. The contract says what it says. And for good reason. When a PERS Choice member (i.e., the patient) seeks treatment with an in-network provider, CalPERS can better control healthcare costs because the parties have agreed in advance upon the price and CalPERS can use the resulting savings to provide better or lower-cost coverage. Thus, CalPERS deliberately discourages members from going out of network by paying lower reimbursement rates and holding the member responsible for the unpaid balance.

Second, an out-of-network provider is not left without any recourse. The EOC makes clear that the PERS Choice member is responsible for the remaining 40 percent not paid by CalPERS and for any other charges billed by the out-of-network provider. Moreover, the EOC allows the out-of-network provider and the patient to contact Anthem prior to the rendition of any medical services for a determination of the exact amount that will be paid for the services. This allows the provider and the patient to determine whether it makes economic sense for the patient to find an in-network or preferred provider, whose charges are paid at a higher contracted rate and for which the patient is not responsible.

In its briefs, OSSC relies on two cases, which do not assist it. In both *Prospect Medical Group, Inc. v. Northridge Emergency Medical* (2009) 45 Cal.4th 497 and *Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, the courts held that out-of-network emergency room physicians could assert claims directly against health care service plans for payments the physicians deemed too low, because such physicians are required by

5

law to render services to all emergency room patients without regard to the patient's insurance status or ability to pay (Health & Saf. Code, § 1317). While OSSC acknowledges that these cases only apply to emergency room physicians, it argues that "the logic and reasoning are the same here." Not true. Unlike emergency room physicians, who must treat all patients seeking emergency care, OSSC is free to pick and choose its patients and focus on those with the greatest ability to pay its charges. OSSC can also find out, in advance of treatment, how much it will be reimbursed by CalPERS and how much it must recover from the patient. Emergency room physicians have none of these advantages.

At oral argument, OSSC relied on two additional cases, which, again, are not helpful to its position. In *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, it was undisputed that Blue Cross owed the out-of-network hospital its reasonable and customary rates for poststabilization emergency medical services during the time the parties did not have a written contract. The rates were owed pursuant to Code of Regulations, title 28, section 1300.71, subdivision (a)(3)(B), because the patients were enrolled in a Medi-Cal HMO, and the opinion mostly centered on the parties' dispute as to how to calculate the appropriate amount. Here, by contrast, the patients at issue were members of PERS Choice, a PPO, and therefore Code of Regulations, title 28, section 1300.71, subdivision (a)(3)(C), not subdivision (a)(3)(B), would apply. OSSC also cited *Consumer Watchdog v. Department of Managed Health Care* (2014) 225 Cal.App.4th 862 for the proposition that the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.) would apply to CalPERS. While CalPERS disputes this, CalPERS assumed that the Act applied for purposes of bringing its demurrer, thus making this point irrelevant.

OSSC further argues that, notwithstanding the EOC, an implied oral promise existed between OSSC and CalPERS, because CalPERS (through Anthem) authorized treatment and stated that OSSC "would be paid" for the treatment. While we disagree that an oral promise was created under the circumstances here, we need not reach the issue because, as the trial court correctly noted, an oral promise cannot be enforced

6

against a government agency, like CalPERS. (Gov. Code, § 815, subd. (a); *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830 ["It is settled that 'a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations'"]; *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109–110.)

## DISPOSITION

The judgment of dismissal is affirmed. CalPERS is entitled to recover its costs on appeal.


_____, Acting P. J.
                      ASHMANN-GERST


We concur:


_____, J.
               CHAVEZ


_____, J.*
               FERNS

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ORTHOPEDIC SPECIALISTS OF SOUTHERN CALIFORNIA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, <br><br> Defendant and Respondent. | B248535 <br><br> (Los Angeles County Super. Ct. No. BC486953) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:[*]

The opinion in the above-entitled matter filed on July 15, 2014, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

[*]     ASHMANN-GERST, Acting P. J. and FERNS, J.[†]

[†]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.