Filed 5/8/15  Centinela Capital Partners v. CalPERS CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CENTINELA CAPITAL PARTNERS, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, <br><br> Defendant and Respondent. | B255256 <br><br> (Los Angeles County <br> Super. Ct. No. BC504309) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael L. Stern, Judge.  Affirmed in part and reversed in part.

Carl E. Douglas and Drew Antablin, for Plaintiff and Appellant.

K&L Gates, Christopher J. Kondon, Matthew B. O'Hanlon, and Saman M. Rejali, for Defendant and Respondent California Public Employees' Retirement System.

\* \* \*

Centinela Capital Partners, LLC (Centinela) sued California Public Employees' Retirement System (CalPERS) for not honoring an alleged oral promise to award Centinela a contract to manage a $100 million investment portfolio for CalPERS. The trial court sustained demurrers to Centinela's claims for breach of contract and promissory estoppel. Centinela appeals. We affirm the dismissal of the promissory estoppel claim, but reverse and remand on the breach of contract claim.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

These facts are drawn from Centinela's original and first amended complaints, as well as from documents subject to judicial notice. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734, fn. 1 [demurrer looks to "complaint and documents subject to judicial notice"].)

Centinela is an asset management firm. CalPERS is the state agency charged with collecting, investing and distributing the pensions of state employees. In 2006 and 2008, respectively, CalPERS hired Centinela to manage two of its $500 million portfolios—the Capital Link I and Capital Link II funds. Each of these funds was created by a detailed written contract: The Capital Link I contract is 95 pages (including 27 pages of schedules), and the Capital Link II contract is 89 pages (including 24 pages of schedules).[1]

In 2009, Centinela and CalPERS started discussing the possibility that Centinela might manage a third, $100 million portfolio to be called Capital Link III. On May 16, 2011, Centinela and CalPERS orally agreed that CalPERS (1) would bypass any competitive bidding process and award Centinela the management of the Capital Link III fund, and (2) would give Centinela a "fair chance" to competitively bid to manage

---

[1]    These contracts were filed as exhibits to the First Amendment Complaint filed in *Baez v. California Public Employees' Retirement System*, L.A.S.C. Case No. BC498010. CalPERS asked the trial court to take judicial notice of the contracts and other matters, but it declined to do so. After giving the parties notice, we have taken judicial notice of the contracts. (Evid. Code, §§ 459(a), 452(d) [court records may be judicially noticed].)
*Baez* is the subject of a separate appeal. See B252772.

another, unspecified larger portfolio in the future. The parties further agreed that CalPERS's performance was contingent upon Centinela severing its ties with Cesar Baez, one of its three principals, who had some association with persons being investigated by the Attorney General for peddling influence with CalPERS. In the original complaint, Centinela alleged that the portions of the oral contract pertaining to the Capital Link III fund would, unless modified, "be on the same terms and conditions as were contained in the [Capital] Link II written contract." In its first amended complaint (FAC), Centinela (1) alleged that the oral contract would "be on the same material terms and conditions as were contained in the [Capital] Link I and II written contracts . . . as reflected in numerous written term sheets regarding [Capital] Link III that had previously been discussed and agreed to by the parties, unless the parties mutually agreed to modify certain of those terms," and (2) enumerated 13 of those material terms. Both complaints alleged that the Capital Link III portion of the oral contract was to "thereafter be memorialized in a written agreement."

In reliance on this oral agreement, Centinela started to sever its ties with Baez. By June 2011, Centinela and Baez had "substantial[] agree[ment]" on the terms of Baez's separation. In July 2011, Centinela learned that CalPERS would not carry through with its oral promise to have Centinela manage the Capital Link III fund. Centinela nevertheless went forward with Baez's separation and signed a written agreement with him on August 22, 2011.

## II.     Procedural history

Centinela sued CalPERS for $35 million on theories of (1) breach of contract, and (2) promissory estoppel.[2] CalPERS demurred to these claims. The trial court sustained the demurrer, with leave to amend on the breach of contract claim and without leave to amend on the promissory estoppel claim because Centinela did not allege a sufficiently "clear an[d] unambiguous promise" to support an estoppel claim. Centinela filed a FAC

---

[2]     Centinela also sued CalPERS and Joseph Dear, CalPERS's Chief Information Officer, for racial discrimination, but Centinela has not appealed the trial court's order sustaining the demurrer to that claim without leave to amend.

3

alleging breach of contract, and the trial court sustained CalPERS's subsequent demurrer without leave to amend, finding the alleged oral contract was "an agreement to agree" and "lacked specificity."

Centinela timely appeals.

## DISCUSSION

In reviewing a trial court's order sustaining a demurrer, our task is to "review the allegations of the operative complaint for facts sufficient to state a claim for relief." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866.) In so doing, we give the complaint a reasonable interpretation (*ibid.*), construe its allegations liberally (*People v. Biane* (2013) 58 Cal.4th 381, 388), and assume all facts alleged in the complaint are true (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528). Our review is de novo. (*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, 921.)

### I. Breach of oral contract

To state a claim for breach of an oral or written contract, a plaintiff must allege (1) the existence of contract, (2) its own performance or a valid excuse for not performing, (3) the defendant's breach, and (4) resulting damage. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [listing elements]; *Stockton Mortgage, Inc. v. Tope*, 233 Cal.App.4th 437, 453 ["The elements of a breach of oral contract claim are the same as those for a breach of written contract."].)

A contract exists only if the parties have a "'meeting of the minds on all material points.'" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 215 (*Bustamante*), quoting *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 359; *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 203.) It is not enough that the parties agree on "some of the terms." (*Ibid*.) Nor is it sufficient if the "essential terms [are] only sketched out, with their final form to be agreed upon in the future." (*Id.* at p. 213.) Only if the agreed-upon terms "provide a basis for determining the existence of a breach and for giving an appropriate remedy" is there a contract. (*Weddington Productions, Inc. v. Flick*

4

(1998) 60 Cal.App.4th 793, 811; *Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 734 [same].)

The oral contract Centinela alleges as a single contract is, in reality, two agreements. It is appropriate to evaluate the enforceability of the agreements separately because their subject matter is distinct and their terms not intertwined. Although no published case has addressed whether courts should evaluate unenforceability due to vagueness on an agreement-by-agreement basis within a single contract, courts take this approach when evaluating unenforceability due to illegality (Civ. Code, § 1599 ["Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void to the latter and valid as to the rest"]), and unenforceability due to unconscionability (Civ. Code, § 1670.5, subd. (a) ["If the court as a matter of law finds . . . any clause of [a] contract to have been unconscionable at the time it was made the court . . . may enforce the remainder of the contract without the unconscionable clause . . ."]). What is more, these courts have used this approach in evaluating demurrers on grounds of unenforceability. (See *Kyablue v. Watkins* (2012) 210 Cal.App.4th 1288, 1295-1296 [in ruling on a demurrer, a court evaluating a contract with enforceable and unenforceable provisions must allow the claim to go forward as to the enforceable provisions].)

The first alleged agreement is CalPERS's promise to grant Centinela a "fair chance" to bid on an unnamed, future portfolio management contract. However, the FAC nowhere specifies which future contract is at issue and nowhere defines what constitutes a "fair chance" to bid. Tellingly, Centinela does not defend this oral agreement in its briefs and conceded it was "vague" at oral argument. This agreement is consequently not an enforceable contract.

The second alleged agreement is CalPERS's promise to have Centinela manage the Capital Link III fund. Centinela sets forth 13 of the material terms of that promise in the FAC and, more importantly, alleges that the management of the Capital Link III fund is to be governed by the same terms and conditions set forth in the very detailed written contracts applicable to the Capital Link I and Capital Link II funds. Centinela's

5

incorporation of the prior written contracts, coupled with its allegation that their terms will apply with equal force to the Capital Link III agreement, provides a basis for evaluating a breach of contract and for fixing damages.

CalPERS raises four arguments in response. First, CalPERS argues that "an oral promise cannot be enforced against a government agency, like CalPERS." (*Orthopedic Specialists of Southern California v. PERS* (2014) 228 Cal.App.4th 644, 649 (*Orthopedic Specialists*).) However, this principle applies when a party is "'su[ing] a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations.'" (*Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830; *Orthopedic Specialists*, at pp. 649-650.) Centinela is suing for breach of an express oral contract, so this policy-based limitation is not implicated. (Accord, Gov. Code, § 814 ["Nothing in this part affects liability based on contract . . ."].)

Second, CalPERS argues that the terms of the oral Capital Link III agreement are too uncertain to form a contract because (1) those terms are subject to modification, and (2) Centinela has inconsistently alleged what those terms are. As to the first point, the reference to possible mutual modification of the agreement just restates the power to modify set forth in statutory law (Civ. Code, § 1697), and thus does not render the agreement uncertain. As to the second, CalPERS asserts that (1) the FAC refers to "numerous written term sheets," while the original complaint did not; and (2) the FAC incorporates the terms of the Capital Link I and Capital Link II contracts, while the original complaint incorporated the terms of only the Capital Link II contract. Although a plaintiff cannot sidestep a demurrer by alleging facts inconsistent with its prior filings (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877), neither of the asserted inconsistencies is, in fact, inconsistent. The FAC specifies that the "numerous written term sheets" simply "reflect[ed]" the "material terms and conditions" of the Capital Link I and Capital Link II contracts; the term sheets were not inconsistent with them. And although the FAC additionally incorporates the terms of the Capital Link I contract, there

6

is only inconsistency if those terms are inconsistent with the terms of the Capital Link II contract. Those two contracts are of slightly different page lengths, but CalPERS has not argued that their terms and conditions are different in any material respect and, at oral argument, admitted that the two contracts were "virtually identical."

Third, CalPERS argues that the alleged agreement is just an "agreement to agree." "'Preliminary negotiations or [agreements] for future negotiations are not the functional equivalent of a valid, subsisting agreement.'" (*Bustamante*, *supra*, 141 Cal.App.4th at pp. 213-214.) At the same time, an oral agreement that contemplates execution of a more formal written contract is a contract if it contains "all the essential terms and conditions." (*Thompson v. Schurman* (1944) 65 Cal.App.2d 432, 440-441.) For the reasons explained above, Centinela has sufficiently alleged that it had an agreement with CalPERS regarding the Capital Link III fund. At this stage, we are not permitted to inquire further because "[w]hether the parties intended their communications to be a binding . . . agreement or an agreement to further negotiate after a formal draft was prepared is a factual question not properly the subject of a demurrer." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 308.) Similar concerns preclude us from affirming the dismissal on the ground that Centinala may have a difficult time proving, as a factual matter, that CalPERS agreed to award a $100 million contract with an oral agreement even less formal than something scribbled on the back of a cocktail napkin. (See *Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1544 [whether "claims can survive a properly supported summary judgment, let alone prevail follow a trial" is irrelevant in ruling on a demurrer].)

Lastly, CalPERS raises several procedural defects. It argues that the FAC does not comply with Code of Civil Procedure section 430.10, subdivision (g). That provision requires that the nature of a contract—written, oral or implied by conduct—be "ascertain[able]" from the complaint. (Civ. Proc. Code, § 430.10, subd. (g).) Here, it is. Citing *Otworth v. Southern Pacific Transportation Co.* (1985) 166 Cal.App.3d 452, 458-459, CalPERS also states that the FAC is deficient for not setting forth the terms of the agreement verbatim or for attaching a copy of the Capital Link I and Capital Link II

7

written contracts. However, *Otworth's* rule applies to "action[s] based on an alleged breach of a written contract" (*ibid.*), not an oral one.

## II. Promissory estoppel

To state a claim for promissory estoppel, a plaintiff must allege (1) a promise that is "clear and unambiguous" in its terms, (2) its actual reliance on that promise, (3) its reliance was reasonable and foreseeable, and (4) injury caused by that reliance. (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) What is more, the plaintiff must "'specifically plead all facts relied on to establish its elements. [Citations.]'" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 802.)

The trial court's order sustaining the demurrer was correct because the alleged oral promises in this case are not clear and unambiguous. This standard requires greater specificity than is necessary to support a breach of contract claim. (*Garcia v. World Savings Bank, FSB* (2010) 183 Cal.App.4th 1031, 1044.) Critically, this standard is not met when the alleged promise relies on extrinsic evidence because a promise is "obviously" not clear and unambiguous "if extrinsic evidence is needed to interpret" it (*ibid.*; accord, *Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179, 1186). The oral promises Centinela alleges lack the requisite clarity: The promise of a "fair chance" to bid on a future, unnamed contract lacks the certainty necessary to support a breach of contract claim for the reasons noted above, and the Capital Link III portion of the agreement relies on incorporation of extrinsic evidence (namely, the Capital Link Fund I and Capital Link Fund II written contracts).

**DISPOSITION**

The judgment is affirmed as to the dismissal of the promissory estoppel claim, but reversed as to the dismissal of the breach of contract claim with instructions to Centinela to proceed solely on the basis of the Capital Link Fund III award. (*Elder v. Pacific Bell Tel. Co.* (2012) 205 Cal.App.4th 841, 856, fn. 14 ["if any part of a cause of action is properly pleaded, the demurrer will be overruled"].) Each party is to bear its own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
                HOFFSTADT


I concur:


_____, J.
        CHAVEZ

ASHMANN-GERST, J., Dissenting in part.

I agree with the majority that the promissory estoppel cause of action should be dismissed; however, I also believe that the breach of contract cause of action should be dismissed. In that regard, I respectfully dissent.

As a procedural matter, it seems to me that the majority has rewritten the first amended complaint (FAC). The majority characterizes the alleged oral contract as "in reality, two agreements." (Maj. Opn., at p. 5) I cannot agree. The FAC alleges one single contract, and breach of just one single contract (par. 20 ["The terms of this oral contract would thereafter be memorialized in a written agreement"]; par. 22 ["to induce it to enter into the oral contract"]; par. 26 ["The contract which is the subject of this action"]; par. 27 [the parties "entered into an express oral contract"]; pars. 28-29 [referring repeatedly to the "parties' oral contract"]; par. 30 [alleging breach of "the parties' agreement"]; par. 31 [seeking damages for "breach of the parties' oral contract"]). In fact, by recognizing that the operative pleading "sets forth the material terms of the contract," Centinela's appellate briefs are consistent with that theory. Notably, Centinela did not ask for leave to amend to allege two distinct agreements, either in the trial court or on appeal. We are bound by the pleading and Centinela's stance in its briefs, and not free to modify the pleading.

*Kyablue v. Watkins* (2012) 210 Cal.App.4th 1288, 1295–1296, cited by the majority, is readily distinguishable. In that case, the Court of Appeal was considering an alleged contract that contained both legal and illegal provisions. Under those limited circumstances, the Court of Appeal held that "[c]ontracts that involve both unlawful and lawful provisions may be enforced if the illegal portion is severable from the legal." (*Id*. at p. 1295.) In contrast, here we have been presented with a complaint that alleges one legal contract with various obligations on both parties' sides.

Because the FAC alleges breach of one contract, and that one contract is vague and uncertain, I would affirm the trial court's order sustaining the demurrer to this cause of action. Moreover, because Centinela did not request leave to amend, there was no

error in denying Centinela leave to amend. It follows that I would affirm the trial court's order dismissing the action.

Setting aside this procedural flaw, the alleged contract is too uncertain to form an enforceable agreement.[1] According to the FAC, "[t]he terms of this oral contract would thereafter be memorialized in a written agreement, and would be on the same material terms and conditions as were contained in the Link I and II written contracts between the parties, as reflected in numerous written terms sheets regarding Link III that had previously been discussed and agreed to by the parties, unless the parties mutually agreed to modify certain of those terms." It is unclear whether the terms of this oral contract mirror those in Capital Link I and II contracts or whether the terms are set forth in unspecified terms sheets (that may or may not reflect the terms in Capital Link I and/or II contracts). While arguably this vagueness could have been cleared up in an amended pleading, Centinela never asked for leave to amend.

As for the allegation that the terms were subject to modification, I disagree with the majority's extrapolation that Centinela was merely referring to Civil Code section 1697. Nothing in the FAC suggests that Centinela was basically restating the parties' power to modify. (Maj. Opn., at p. 6) Indeed, the FAC does not cite the statute or use language from the statute, including, for example, that any modification would have to be in writing. Rather, in my opinion, the fact that Centinela admits that the parties could modify their oral agreement compels the conclusion that they had no certain agreement in the first place.

_____

[1] The majority so recognizes, at least as to the "'fair chance' to bid" aspect of this claim. (See Maj. Opn., at p. 5 ["Centinela does not defend this oral agreement in its briefs and conceded it was 'vague' at oral argument"].)

2

For these reasons, I would affirm the trial court's order sustaining the demurrer without leave to amend in its entirety.


_____, Acting P. J.
ASHMANN-GERST

3