Filed 9/11/23  Worldwide Aircraft Services v. Fresno Unified School Dist. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WORLDWIDE AIRCRAFT SERVICES, INC., Plaintiff and Appellant, v. FRESNO UNIFIED SCHOOL DISTRICT, Defendant and Respondent. | F084741 (Super. Ct. No. 20CECG00607) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Law Office of Robert F. Keehn, Robert F. Keehn; Law Office of Josiah Young, Josiah Young and Michael D. McClelland, for Plaintiff and Appellant.

Klein, Hockel, Iezza & Patel, Jonathan Allan Klein and Sweta H. Patel, for Defendant and Respondent.

-ooOoo-

Fresno Unified School District ("FUSD") operates an employee healthcare plan ("the Plan").  While C.H.—an enrollee in the Plan—was traveling abroad, she fell critically ill.  Her husband arranged an emergency medical flight back to California through Worldwide Aircraft Services, Inc. ("Worldwide").

The Plan authorized the flight and agreed it was medically necessary.[1]  After Worldwide completed its service, it billed the Plan approximately $1.3 million for the flight.  The Plan paid Worldwide approximately $115,000, an amount Worldwide found unsatisfactory.

Worldwide sued the Plan, alleging claims for breaching an implied contract, quantum meruit, and unjust enrichment.  FUSD appeared on the Plan's behalf and demurred to the complaint.

Ultimately, the trial court sustained the demurrer, finding FUSD and the Plan were separate entities, but the Plan was nonetheless immune under the Government Claims Act.  (Gov. Code, § 810 et seq.)  The court alternatively concluded Worldwide otherwise failed to state a proper claim, and judgment was entered in the Plan's favor.

On appeal, Worldwide argues (1) it properly asserted claims and (2) the Plan is not entitled to immunity because it is not a government entity as defined by statute.  For purposes of demurrer only, we agree and reverse the judgment.

## BACKGROUND

The following pertinent facts and claims are based on the complaint[2] Worldwide filed against the Plan and reflect the fact that, "[b]ecause this case comes to us on demurrer, we have assumed the facts pleaded as true …." (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 787 (*Mathews*).)  Our summary also includes some facts gleaned from the Plan's comprehensive booklet, of which the trial court took judicial notice.

---

[1] "This case comes to us at the demurrer stage, so for present purposes we" have assumed the truth of Worldwide's factual allegations.  (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209.)

[2] Technically, the facts are taken from the third amended complaint.  The trial court separately sustained a demurrer to all three complaints, and its written rulings each time focused largely on the specific amendments at issue.  For simplicity, we refer to the court's ruling as a single document.

Factual Allegations

The Plan is "a self-insured, non-federal governmental plan providing certain benefits to eligible employees (current and retired) of the Fresno Unified School District and their dependents."  It is "contracted with Anthem Blue Cross, an organization providing [a] [n]etwork of health care providers."  The Plan "expressly contemplates that legal action may be commenced against the" Plan.  It is "neither a 'public entity' nor a 'local public entity,' " as defined in the Government Code.

C.H., a beneficiary under the Plan, "was afflicted with a life-threatening infection while visiting Switzerland" and "required immediate air medical transportation."  The Plan "issued [a] written pre-authorization" to Worldwide "for air medical transportation," "acknowledg[ing] that such transport was medically necessary."  Worldwide "did not have a pre-negotiated contract with" the Plan "and was not part of [its] provider network."  The Plan "knew or should have known" Worldwide "would charge its usual and customary rate for [air-medical-transportation] services …."

When Worldwide billed the Plan, the Plan "proceeded to assess, process, negotiate, and remit partial payment"—"a fraction of the amount billed …."  The partial payment did not satisfy either Worldwide's "own usual and customary rate or '100% of Usual, Customary and Reasonable Charges' " under the Plan.  The Plan's " 'Usual, Customary and Reasonable Charges' " include the fact "[t]he amount … shall be determined by the Plan."

The Plan "benefitted" from Worldwide's transportation by "effectively fulfill[ing] [its] obligation to provide medically necessary care …."  The Plan, however, "grossly underpaid … for the services rendered."

Causes of Action

Worldwide alleged three causes of action.  First, it claimed "damages pursuant to breach of an implied-in-fact contract inferred from" the parties' conduct.  It asserted the

3.

Plan was "obligated … to pay '100% of Usual, Customary and Reasonable Charges' " "for air ambulance transportation."

"In consideration for [Worldwide's] agreement to provide air medical transportation …, [the Plan] agreed to reimburse [Worldwide] for the expenses [it] incurred for transport …." "[T]he appropriate level of reimbursement could be less than, equivalent to, or even more than [Worldwide's] own usual and customary rate." Both Worldwide and the Plan "intended and assented" to receive and pay, respectively, compensation "for the services rendered." The Plan "breached the implied-in-fact contract … by remitting only a fraction of the billed charges …."

Second, Worldwide alleged it was entitled to recover in quantum meruit. It claimed it expected to receive compensation and its services benefited the Plan by "fulfill[ing]" an "obligation[] to provide medically necessary care to" an enrollee. But the Plan "failed and refused" to properly compensate Worldwide.

Last, Worldwide believed the Plan "would be unjustly enriched by failing to pay [Worldwide] the difference between the[] partial payment … and '100% of Usual, Customary and Reasonable charges' for the benefit conferred upon" the Plan. All told, Worldwide sought "$1,348,247.12 or … an amount determined by [a] trier of fact …."

Demurrer

FUSD, appearing on the Plan's behalf, demurred to the complaint. The trial court sustained the demurrer, ruling the Plan was immune under the Government Claims Act. The court held "the Plan may be sued in its own right and is … a proper defendant," but "[g]iven the extensive control and involvement of … FUSD in the Plan's administration and affairs, and the Plan's inseparable affiliation with … FUSD, it is imbued with the character of a public entity."

Alternatively, the court held Worldwide failed to adequately state a claim. Judgment was subsequently entered on the Plan's behalf.

4.

## **DISCUSSION**

This appeal presents a deceptively simple question: did Worldwide state a claim sufficient to survive a demurrer? We hold that it did.

Worldwide adequately alleged the Plan was both its own entity and not a public entity as defined by the Government Code. It also properly pleaded both entitlement to reasonable compensation in quantum meruit and an unreasonable payment. Accordingly, we reverse the judgment.

## **I. Standard of Review**

"[T]he standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) " ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

"[T]he complaint ordinarily is sufficient if it alleges ultimate rather than evidentiary facts." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 (*Doe*).) " ' "While it is true that pleading conclusions of law does not fulfill this requirement, it has long been recognized that '[t]he distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree. [Citations.] For example, the courts have permitted allegations which obviously included conclusions of law and have termed them "ultimate facts" or "conclusions of fact." ' [Citations.] *What is important is that the complaint as a whole contain sufficient facts to apprise the defendant of the basis upon which the plaintiff is seeking relief.*" ' " (*Thompson v. Spitzer* (2023) 90 Cal.App.5th 436, 452 (*Thompson*).)

5.

"Likewise, ' "[t]he particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff. [Citation.]" [Citation.] There is no need to require specificity in the pleadings because "modern discovery procedures necessarily affect the amount of detail that should be required in a pleading." ' " (*Thompson, supra,* 90 Cal.App.5th at p. 452.)

## II. Public Entity

Worldwide argues the trial court incorrectly ruled the Plan was a public entity. FUSD argues the Plan is "indisputabl[y] … a public entity" because school districts are public entities. We conclude Worldwide, under the prevailing standards of review, has the better argument.

In the complaint, Worldwide alleged the Plan was its own entity, "contemplat[ing] that legal action may be commenced [directly] against" itself. Worldwide also alleged the Plan was "neither a 'public entity' nor a 'local public entity' " under the Government Code. This is an ultimate fact, not a legal conclusion. (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552, fn. 4 [pleading compliance with the "claims statute" is "an ultimate fact," "not a conclusion of law."]; Code Civ. Proc., § 452 [complaint's "allegations must be liberally construed, with a view to substantial justice between the parties"]; see *Doe, supra,* 42 Cal.4th at p. 550 [complaint need not allege "evidentiary facts"].)

The trial court agreed the Plan—not FUSD—was the proper defendant. But the court erred in further concluding the Plan was "imbued with the character of a public entity." In our view, that conclusion assumes too much. Liberally construing the complaint "means that the [we] draw[] inferences favorable to the plaintiff, not the defendant." (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1238.)

The record did not contain sufficient information to conclusively establish the Plan is a public entity under the Government Claims Act. It appears further evidence is necessary to clarify FUSD's involvement with the Plan, the Plan's involvement with Anthem Blue Cross, and the Plan's status or lack thereof as a distinct legal entity. The record is largely silent on these facts.[3]

In arguing otherwise, FUSD cites *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289 (*Sheppard*). FUSD claims *Sheppard* held "a regional occupational program established by four public school districts[] was a public entity even though the defendant was not the school district itself."

However, *Sheppard* "conclude[d] the … complaint alleged [the plaintiff] was directly employed by a political subdivision of the state" because a "public school district is a political subdivision of the State of California." (*Sheppard, supra,* 191 Cal.App.4th at p. 301.) The conclusion was based on the fact the employer—"a regional occupational program"—is "established by one or more public school districts under Education Code [section] 52301." (*Ibid.*) More importantly, the Court of Appeal held only that it was "satisfied [plaintiff] … *pleaded sufficient facts to show* … employment as an instructor by a regional occupational program constituted direct employment by a political subdivision of the state." (*Ibid.*, emphasis added.)

In other words, *Sheppard*'s public-entity discussion related solely to pleading—it did not establish law. (See *County of Santa Clara v. Superior Court of Santa Clara* (2023) 14 Cal.5th 1034, 1055-1056 (*Santa Clara*) ["*Sheppard* …, to the extent it relied on the Government Claims Act, … failed to undertake a careful review of the claim before it …. To the extent it held that a quantum meruit claim against the public agency was unavailable more generally, *Sheppard* is plainly distinguishable because an express

---

[3] At best, the Plan's booklet establishes FUSD's "Joint Health Management Board" is "the sponsor of the Fresno Unified School District Health Care Plan …." The board's composition includes many nonpublic members—at least "as of July 1, 2012[.]"

7.

contract existed between the parties."].)  This case is quite the opposite.  There is no similar statute authorizing or enabling a school district to establish a healthcare plan.  (Cf. *Orthopedic Specialists of Southern California v. Public Employees' Retirement System* (2014) 228 Cal.App.4th 644, 646 (*Orthopedic*) ["CalPERS is a unit of the Government Operations Agency.  (Gov. Code, § 20002.)"]; *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.* (9th Cir. 2014) 766 F.3d 1002, 1006, 1012 [convention center a public entity because "it [was] a wholly owned subsidiary and instrumentality of" city and "California has granted cities the statutory authority to construct public assembly or convention halls"].)

Although FUSD cites to federal statutes, those laws are definitional, and do not authorize or enable school-district plan establishment.  (See, e.g., 29 U.S.C. § 1002(32) [" 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof"].  Most importantly, Worldwide sufficiently pleaded the Plan was both its own entity and *not* a governmental entity under the Government Claims Act.  We must accept these factual allegations as true.  (See *Silguero v. Creteguard, Inc.* (2010) 187 Cal.App.4th 60, 64 [" 'One of the dangers of winning on demurrer is that you are stuck, on appeal, with your opponent's version of the facts[.]' "].)  The trial court erred in sustaining the demurrer based on the Plan's status as a government entity.[4]

---

[4] Our conclusion rests solely on the pleadings and judicially noticed facts.  We do not foreclose the possibility the Plan can establish governmental status under the Government Claims Act during the course of the litigation.

### III. Quantum Meruit

FUSD argues Worldwide, by focusing instead on other aspects of the court's ruling, has failed "to establish [its] quasi-contract claims were properly pled."[5] We disagree and find Worldwide properly alleged a claim in quantum meruit.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made ….' " (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458 (*Huskinson*).)

Quantum meruit "manifests ' " 'a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.' " ' " (*Santa Clara, supra,* 14 Cal.5th at p. 1050.) " 'The idea that one must be *benefited* by the goods and services bestowed is … integral to recovery in quantum meruit; hence courts have always required that the plaintiff have bestowed some benefit on the defendant as a prerequisite to recovery.' " (*Chodos v. Borman* (2014) 227 Cal.App.4th 76, 97.)

---

[5] FUSD presents this point as Worldwide forfeiting the opportunity to claim it properly pleaded a cause of action. Even if we agreed, "an appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.) Because we review de novo a trial court ruling sustaining a demurrer, and the law demands liberal construction, we would exercise our discretion to decide whether the complaint properly alleged a claim. (*Shetty v. HSBC Bank USA, N.A.* (2023) 91 Cal.App.5th 796, 800; Code Civ. Proc., § 452.)

Here, Worldwide alleged it contacted the Plan, the Plan "issued [a] written pre-authorization" for "medically necessary" transportation, benefitted from the transportation, but "grossly underpaid … for the services rendered …." No further allegation is required because there is no reasonable inference transportation was gratuitous. Indeed, the fact the Plan actually paid is evidence highlighting the point.

We also find public policy is not frustrated. If the Plan is not a public entity, then public policy is not implicated. If it is a public entity, there is no reason to treat public entities involved in health care differently than private entities. (Cf. *Santa Clara, supra,* 14 Cal.5th at p. 1051 [" 'nothing in the statutory scheme … suggests that state and other government health [care service plans] should be treated differently than private [health plans], nor [is there] any ' "significant public policy reason to exempt a state licensed [health care service plan] from liability … under the [Knox-Keene] Act simply because it is operated by a public rather than a private entity." ' "].)[6] " ' "The prompt and appropriate reimbursement of emergency providers ensures the continued financial viability of California's health care delivery system. ... [D]enying emergency providers judicial recourse to challenge the fairness of a health plan's reimbursement determination[] allows a health plan to systematically underpay California's safety-net providers …." ' "[7] (*Id.* at p. 1052.)

Finally, FUSD repeatedly argues its plan—the Plan's booklet—makes clear it has complete discretion to determine payment: "The Plan expressly provides that '[t]he

[6] " ' "The Knox-Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care." ' " (*Santa Clara, supra,* 14 Cal.5th at p. 1041; Health and Saf. Code, § 1340 et seq.) Although the parties agree the Knox-Keene Act has no application in this case, the public policy concerns relating to healthcare are nonetheless identical and pervasive.

[7] There is no reason to believe out-of-state emergency providers deserve less recourse. This is true because we believe the overriding policy concerns focus not on the provider, but rather on ensuring Californians receive appropriate healthcare services without regard to their immediate location.

10.

amount of Usual, Customary and Reasonable Charges … shall be **determined by the Plan**.' " (Emphasis in original.) The argument misses the mark.

When recovery is available, "the amount of []payment is governed either by contract (when the parties have a preexisting contract) or by the quasi-contractual remedy of quantum meruit (when they do not) …." (*Long Beach Memorial Medical Center v. Kaiser Foundation Health Plan, Inc.* (2021) 71 Cal.App.5th 323, 338.) *There is no contract between these parties.* Put simply, the Plan's ability to determine the amount it pays controls only its responsibility to C.H., not a noncontracting third party like Worldwide.[8]

It is true, as FUSD points out, the courts in *Orthopedic, supra,* 228 Cal.App.4th 644 and *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200 (*Pacific*) both affirmed sustained demurrers involving medical quantum meruit claims. We find those cases distinguishable and inapposite. Both cases involved nonemergency services. (E.g., *Orthopedic, supra,* at p. 649; *Pacific,* at pp. 214-215.) In *Orthopedic,* the court explicitly recognized nonemergency providers are "free to pick and choose [their] patients and focus on those with the greatest ability to pay …." (*Orthopedic,* at p. 649.) Emergency providers are different: "the exigent circumstances facing a patient in need of emergency services helps explain why emergency care providers must provide emergency services without first questioning the patient's ability to pay." (*Pacific,* at p. 209.)

Perhaps more importantly, both *Orthopedic* and *Pacific* relied on the Knox-Keene Act in limiting potential compensation. (*Orthopedic, supra,* 228 Cal.App.4th at pp. 646, 648 ["evidence of coverage" "contract" "regulated by the Department of Managed Health

---

[8] We pause to note in the ordinary case, a third party like Worldwide generally sues the *insured* to recover its losses when an insurer underpays on a claim. This case, as FUSD notes, is somewhat unusual in that regard. But we see that as no reason to deny relief on this appeal.

Care" and regulation "governed" compensation]; *Pacific, supra,* 12 Cal.App.5th at p. 215 "Pacific Bay is using quantum meruit to recover something to which it is not entitled under the Knox-Keene Act or its applicable regulations."]; see *Santa Clara, supra,* 14 Cal.5th at p. 1041 [" ' "The Knox-Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care." ' "].) The parties here agree the Knox-Keene Act is inapplicable. Accordingly, we do not find these cases persuasive.[9]

" '[O]ur inquiry ends and reversal is required once we determine a complaint has stated a cause of action under any legal theory.' " (*Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938.) Reading the complaint liberally and as a whole, we conclude Worldwide sufficiently pleaded an action in quantum meruit. Reversal is required.

## IV. Remaining Claims—Implied-Contract Breach and Unjust Enrichment

The remaining alleged actions—unjust enrichment and implied-contract breach— do not survive. Unjust enrichment is inapplicable where other "common civil law and statutes already provide[] a method to achieve justice for the wrongs allegedly committed …." (*LeBrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 211-212.) The implied-contract claim falls short because there is no indication "the parties reached any sort of agreement as to the rate [the Plan] would pay [Worldwide]."[10] (*Pacific, supra,* 12 Cal.App.5th at p. 216.)

---

[9] We also find it dubious *Orthopedic,* to the extent it meant what it said in finding quantum meruit improperly pled, stated, "The contract says what it says." (*Orthopedic, supra,* 228 Cal.App.4th at p. 648.) The entire point of quantum meruit is that *there is no governing contract*. (*Huskinson, supra,* 32 Cal.4th at p. 458.)

[10] The complaint alleges the Plan "implicitly agreed to pay" Worldwide an amount "that … could be less than, equivalent to, or even more than" the billed amount. Clearly, there is no specific agreement.

12.

**CONCLUSION**

This appeal resolves issues solely related to pleading and demurrer. "Whether [Worldwide] will succeed on the merits after the development of an evidentiary record remains to be seen …." (*Mathews, supra,* 8 Cal.5th at p. 787; *Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 533 [" 'Whether [Worldwide] can produce at trial, or in response to a motion for summary judgment, *evidence* that will in fact support all or any of [its] allegations ... *is another matter.*"].)

We do not decide whether the Plan is its own legal entity, is or is not a governmental entity defined by the Government Claims Act, or that it is not entitled to governmental immunity. In sum, we conclude only (1) the record does not now justify a finding as a matter of law that the Plan is a public entity entitled to immunity, and (2) that Worldwide has properly alleged a claim in quantum meruit.

On remand, it is likely the parties will continue to litigate the Plan's status vis-à-vis the Government Claims Act. If there is a determination the Plan falls under the Government Claims Act—either itself or as FUSD—the trial court will still need to decide whether governmental immunity is appropriate. (*Santa Clara, supra,* 14 Cal.5th 1034, 1056 ["we are not persuaded that the Legislature intended to foreclose all quantum meruit claims against public entities when it drafted the Government Claims Act's immunity and liability provisions"].) We express no view on these issues, and neither the trial court nor the parties should construe this opinion as expressing a particular view.

13.

## **DISPOSITION**

The judgment is reversed.  The order sustaining the demurrer is vacated.  The trial court is directed to conduct proceedings consistent with this opinion.  Each party to bear its costs.  (Cal. Rules of Court, rule 8.278(a)(5).)


SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


PEÑA, J.