Filed 5/19/17  Certified for publication 5/31/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PACIFIC BAY RECOVERY, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA PHYSICIANS' SERVICES, INC., <br><br> Defendant and Respondent. | D070561 <br><br><br><br> (Super. Ct. No. 37-2015-00024215-CU-CO-CTL ) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

James M. Hester and Richard W. Weinthal for Plaintiff and Appellant.

Manatt, Phelps & Phillips, John M. LeBlanc, Joanna S. McCallum and John T. Fogarty for Defendant and Respondent.

California Physicians' Services dba Blue Shield of California (Blue Shield) is a health care service plan subject to the Knox-Keene Health Care Service Plan Act of 1975

(Knox-Keene Act), Health and Safety Code section 1340 et seq.[1]  Pacific Bay Recovery, Inc. (Pacific Bay) is a medical provider that treats substance abuse and narcotic addiction. Blue Shield contracts with certain medical groups and providers to provide medical care at reduced costs through a network of provider contracts.  (§ 1342.6.)  Pacific Bay had no provider contract with Blue Shield during the time at issue in this matter.  Thus, Pacific Bay was an out-of-network provider.

Pacific Bay treated an individual who was a subscriber to a Blue Shield health plan.  It submitted invoices to Blue Shield for payment for the services rendered to the subscriber in the amount of $3,500 each of the 31 days of treatment.  Blue Shield paid Pacific Bay for six days of treatment at the billed rate of $3,500 per day.  Pacific Bay contends it was underpaid and brought suit against Blue Shield to recover the additional amount it claimed to be owed.  The court sustained Blue Shield's demurrer to the first amended complaint (FAC) without leave to amend, finding that Pacific Bay had not shown that it was entitled to any payment from Blue Shield.

Here, Pacific Bay argues the court erred in sustaining the demurrer without leave to amend.  It frames the issue before this court as follows:  Is Blue Shield obligated to pay Pacific Bay, an out-of-network nonemergency provider, a usual, customary, and reasonable rate for services Pacific Bay provided to a Blue Shield subscriber?  On the record before us, we answer this question in the negative.  As such, we affirm the

---

[1]     Statutory references are to the Health and Safety Code, unless otherwise specified.

2

judgment in this matter, which followed the superior court sustaining Blue Shield's demurrer to the FAC.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Allegations in the FAC*

Blue Shield is a health care service plan under the Knox-Keene Act. The Department of Managed Health Care (DMHC) regulates Blue Shield.

Pacific Bay specializes in treating substance abuse and narcotic addiction and has treated numerous patients, including patients who are subscribers and/or members of a Blue Shield health care plan. Pacific Bay has a reputation of providing high quality care, treatment, and procedures. It provides intensive inpatient and outpatient services to patients struggling with addiction.

A Blue Shield subscriber was admitted to Pacific Bay's program on December 1, 2014. At that time, the subscriber belonged to a Blue Shield PPO plan and was covered under a policy or certificate of insurance that was issued and underwritten by Blue Shield. This plan ensured the subscriber's access to medically necessary treatments, care, procedures, and surgeries by medical providers. However, Pacific Bay was an "out-of-network provider" that had no preferred provider contracts or other contracts with Blue Shield at the time it rendered services for the subscriber.

Pacific Bay contacted Blue Shield to obtain prior authorization, precertification, and consent to render treatment and perform procedures on the subscriber. Blue Shield advised Pacific Bay that the subscriber was insured, covered, and eligible for coverage under Blue Shield's PPO plan for the services to be rendered by Pacific Bay at facilities

3

operated by Pacific Bay. In addition, Pacific Bay believed Blue Shield would pay for the services it provided the subscriber. Blue Shield did not advise Pacific Bay that the applicable plan or policy was subject to certain exclusions, limitations, or qualifications, which might result in denial of coverage of the services provided to the subscriber. Also, Blue Shield did not offer Pacific Bay copies of the relevant policies or certificate of insurance coverage applicable to the subscriber. Pacific Bay was led to believe that it would be paid a portion or percentage of its total billed charges.

During the course of its treatment of the subscriber, Pacific Bay submitted five invoices to Blue Shield for its services at its usual and customary rate of $3,500 per day. In response, Blue Shield provided Pacific Bay with an explanation of benefits (EOB) in relation to the subscriber's plan. Blue Shield paid Pacific Bay for six of the 31 days of service at a rate of $3,500 per day. It paid nothing for the additional 25 days.

Pacific Bay appealed Blue Shield's payment for the services, but did not receive a satisfactory answer. The majority of Pacific Bay's invoices remained unpaid.

*Pacific Bay's Suit*

Believing it had been underpaid by Blue Shield, Pacific Bay filed a complaint in San Diego Superior Court, alleging six causes of action (recovery on payment for services rendered, quantum meruit, breach of implied contract, declaratory relief, estoppel, and violation of regulations). The thrust of Pacific Bay's complaint was that it contacted Blue Shield to obtain prior authorization, precertification, and consent to render treatment to the subscriber and was led to believe it would be "paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and

4

customary charges." In the complaint, Pacific Bay claimed that the DMHC had adopted regulations that "define the amount that health care service plans[,] such as Blue Shield[,] are obligated to pay non-contracted providers such as" Pacific Bay. In support of its allegations, Pacific Bay cited to section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations. Specifically, Pacific Bay alleged that this portion of the regulation provided the "same criteria used by California Courts to determine the *quantum meruit* amounts that should be paid for services rendered by non-contracted providers by insurers in California." Based on its six causes of action, Pacific Bay averred that it was "owed reimbursement, compensation, and payment of the cost of the services, treatment, care and pharmaceuticals[,] which it rendered and provided to the [subscriber] at [its] billed rates or at rates equivalent to the usual, customary and reasonable value of [its] services, in conformance with the commitments, contracts, promises and agreements made by Blue Shield."

Blue Shield demurred to the original complaint, arguing that it could not be liable to Pacific Bay, an out-of-network provider without any contract with Blue Shield, for any amount beyond what the terms of the governing evidence of coverage (EOC)[2] allowed. Blue Shield also explained that Pacific Bay did not plead any facts that would entitle it to receive additional payment from Blue Shield. Specifically, Blue Shield noted that Pacific

---

[2] An evidence of coverage is a contract between a health plan and a subscriber that provides the terms of coverage, which generally include benefits, covered services, premiums, how much the prescriber pays, conditions, and limitations.

Bay simply offered conclusory allegations that it rendered services at Blue Shield's request without concrete details explaining the arrangement.

In opposing the demurrer, Pacific Bay argued it was a provider under section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations, and thus, was entitled to the reasonable and customary value of the services rendered. Pacific Bay also maintained that its claims for breach of implied contract and estoppel could not be determined as a matter of law so a demurrer to those causes of action was inappropriate.

The court found that Pacific Bay admitted in the complaint that it had no contract with Blue Shield that would require Blue Shield to pay Pacific Bay the amounts it sought. Determining that section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations only applied to emergency providers, the court emphasized Pacific Bay did not allege it was an emergency provider that provided emergency services. The court also observed that Pacific Bay did not allege (1) facts to support the conclusion that it rendered services at Blue Shield's request, or (2) a specific amount Blue Shield agreed it would pay or reimburse Pacific Bay. The court sustained the demurrer, but granted Pacific Bay leave to amend.

Pacific Bay filed the FAC, which included the same six causes of action as the original complaint. Blue Shield demurred to the FAC, arguing that Pacific Bay did not address any of the problems the court identified in ruling on the demurrer to the original complaint. In opposing the demurrer, Pacific Bay again insisted that it was entitled to payment under section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations. Echoing its ruling on the demurrer to the original complaint, the court

6

sustained the demurrer to the FAC, finding that Pacific Bay had not alleged any facts upon which it was entitled to payment from Blue Shield.  The court did not grant leave to amend the FAC.

The court subsequently entered judgment, dismissing the FAC with prejudice. Pacific Bay timely appealed.

## DISCUSSION

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action."  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  "When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse."  (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)  In reviewing the sustaining of a demurrer, we review the trial court's result for error, and not its legal reasoning.  (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

7

The instant matter arises from a payment dispute. Pacific Bay submitted claims to Blue Shield for services provided to a Blue Shield subscriber. Blue Shield paid Pacific Bay, but Pacific Bay claims the amount of the payment was insufficient. Because this dispute concerns claims submitted by a medical provider to a health plan for processing and payment, the Knox-Keene Act controls.

The Knox-Keene Act governs health care service plans. The Knox-Keene Act "is 'a comprehensive system of licensing and regulation' [citation], formerly under the jurisdiction of the Department of Corporations (DOC) and presently within the jurisdiction of the Department of Managed Health Care (DMHC) [citations]." (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 155, fn. 3.) The intent and purpose of the Legislature in enacting the Knox-Keene Act was "to promote the delivery and the quality of health and medical care to the people of the State of California who enroll in, or subscribe for the services rendered by, a health care service plan or specialized health care service plan." (§ 1342.) The Legislature sought to accomplish this purpose by, among other things, (1) "transferring the financial risk of health care from patients to providers" to "[h]elp . . . ensure the best possible health care for the public at the lowest possible cost," (2) imposing "proper regulatory procedures" to "[e]nsur[e] the financial stability" of the system, and (3) establishing a system that ensures health care service plan "subscribers and enrollees receive available and accessible health and medical services rendered in a manner providing continuity of care." (§ 1342, subds. (d), (f), & (g).)

8

DMHC regulations govern submission and payment of claims. For example, section 1300.71 of title 28 of the California Code of Regulations is entitled "Claims Settlement Practices." This regulation is authorized by sections 1371 and 1371.35. These statutes impose procedural requirements on claim processing and subject health care service plans to disciplinary action and penalties for failure to timely comply with those requirements. (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.*, *supra*, 94 Cal.App.4th at p. 163.)

"The DMHC explained in its initial statement of reasons that California Code of Regulations, title 28, section 1300.71 was 'necessary to clearly define terms relating to claim settlement and reimbursement, and provide procedures for plans and providers to prevent unreasonable delays in payment of provider claims.' Further, the DMHC wanted to clarify 'the meaning of unfair payment practices and the term "complete and accurate claim." ' " (*Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1271 (*Children's Hospital*).)

The Claims Settlement Practices regulation defines "reimbursement of a claim" as:

"(A) For contracted providers with a written contract, including in-network point-of-service (POS) and preferred provider organizations (PPO): the agreed upon contract rate;

"(B) For contracted providers without a written contract and non-contracted providers, except those providing services described in paragraph (C) below: the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were

9

rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case; and

"(C) For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage." (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(A)-(C).)

In paragraph 24 of the FAC, Pacific Bay acknowledges the DMHC "has adopted regulations that define the amount that health care service plans such as Blue Shield are obligated to pay non-contract providers such as" Pacific Bay. Then Pacific Bay cites to section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations, arguing that courts use the criteria found there to determine the amounts that health plans should pay for services rendered by noncontracted providers.

In its opening brief, Pacific Bay echoes paragraph 24's allegations, contending that Blue Shield was required to reimburse Pacific Bay's claims under section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations. Further, Pacific Bay maintains that it is a noncontracted provider referred to in subdivision (a)(3)(B), asserting it "would make no sense if this regulation applied only to emergency providers[.]" However, Pacific Bay ignores the exception to this subdivision found in paragraph (C): "For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage." (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(C).)

Here, Pacific Bay admits that it was an out-of-network provider with no contract with Blue Shield. It alleges that the subject subscriber belonged to a Blue Shield PPO

10

plan at the time Pacific Bay provided the subscriber services. In addition, Pacific Bay did not allege that it provided emergency services to the subscriber. Therefore, in providing the services at issue here, Pacific Bay clearly was a provider described in section 1300.71, subdivision (a)(3)(C) of title 28 of the California Code of Regulations. As such, its right to reimbursement, if any, would be found under the applicable Blue Shield EOC.[3]

Nevertheless, in its opening brief, Pacific Bay hints that "it possibly should be classified as an emergency provider" because "many of its patients suffer from the scourges of drug and alcohol addiction and often, like many emergency room patients, lack the ability to engage in thoughtful examinations of the marketplace and frequently act out of desperation." Thus, Pacific Bay appears to assert that a provider can become an emergency provider based on the capability of the patient to examine the marketplace and make a reasoned decision to engage a certain medical provider. However, Pacific Bay does not provide any authority to support this theory.

Section 1317.1 defines an "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in any of the following: [¶] (1) Placing the patient's health in serious jeopardy. [¶] (2)

---

3    In its first demurrer, Blue Shield argued: "[I]f a health plan member chooses to obtain health care services from an out-of-network provider . . . the member assumes the responsibility to pay that provider over and above whatever the plan may pay under the governing contract with its member (the 'Evidence of Coverage'); the health plan has no direct liability to the health care provider." Pacific Bay never addressed that argument.

11

Serious impairment to bodily functions.  [¶] (3) Serious dysfunction of any bodily organ or part."  (§ 1317.1, subd. (b)(1)-(3).)

Nowhere in the FAC does Pacific Bay allege that the subject subscriber requested treatment for an emergency medical condition.  There was no allegation that the Blue Shield subscriber needed Pacific Bay to provide immediate medical attention to avoid (1) placing the subscriber's heath in jeopardy, (2) serious impairment to bodily functions, or (3) serious dysfunction of any bodily organ or part.  Indeed, the exigent circumstances facing a patient in need of emergency services helps explain why emergency care providers must provide emergency services without first questioning the patient's ability to pay.  (§ 1317, subds. (b), (d); *Prospect Medical Group, Inc. v. Northridge Emergency Medical Group* (2009) 45 Cal.4th 497, 504; *Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211, 215-216 & fn. 4.)  Federal law is similar.  (42 U.S.C. § 1395dd; see *Bell*, *supra*, at p. 215, fn. 4.)

Section 1317.1 also defines "emergency services and care":

> " 'Emergency services and care' means medical screening, examination, and evaluation by a physician and surgeon, or, to the extent permitted by applicable law, by other appropriate licensed persons under the supervision of a physician and surgeon, to determine if an emergency medical condition or active labor exists and, if it does, the care, treatment, and surgery, if within the scope of that person's license, necessary to relieve or eliminate the emergency medical condition, within the capability of the facility."  (§1317.1, subd. (a)(1).)

In the FAC, Pacific Bay does not allege that it was providing emergency services or care to the Blue Shield subscriber.  Further, it does not contend that it could plead additional facts that it provided the subscriber emergency medical services or care.

12

In short, we find nothing in the FAC that supports Pacific Bay's newly raised contention that it could be an emergency services provider in the context of the instant matter.

At most, in its reply brief, Pacific Bay contends that it was a question of fact sufficient to defeat demurrer whether the subscriber's substance abuse issues would have qualified as a "psychiatric emergency" under section 1317.1, subdivision (a)(2)(A).[4] As a threshold matter, we need not address arguments made for the first time in a reply brief. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10.) Yet, even if we were inclined to address this issue on the merits, we would find Pacific Bay's argument wanting. Simply pointing to a statute discussing a "psychiatric emergency" is not the panacea that cures the defects in the FAC. To the contrary, it is clear that Pacific Bay, in treating the subscriber, did not believe he or she suffered from a condition that needed immediate medical care because it allegedly contacted Blue Shield to inquire about the subscriber's heath care coverage before offering any treatment. Pacific Bay did not allege that the subscriber was suffering from a psychiatric emergency or that it treated him for a psychiatric emergency. Section 1317.1, subdivision (a)(2)(A) does not and cannot alter these allegations. Simply put, Pacific Bay's newly raised theory that it is a question of fact whether the subscriber was

_____

4      Section 1317.1, subdivision (a)(2)(A) provides:  " 'Emergency services and care' also means an additional screening, examination, and evaluation by a physician, or other personnel to the extent permitted by applicable law and within the scope of their licensure and clinical privileges, to determine if a psychiatric emergency medical condition exists, and the care and treatment necessary to relieve or eliminate the psychiatric emergency medical condition, within the capability of the facility."

13

suffering from a psychiatric emergency is made from whole cloth. We therefore disregard it.

Also, Pacific Bay's reliance on *Gould v. Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 1059 (*Gould*) does not change our analysis. *Gould* is the source of the six factors stated in section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations. (See *Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1272.) And, in adopting section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations, the DMHC established the minimum criteria for reimbursement of a claim. (*Children's Hospital*, *supra*, at p. 1273.) However, *Gould* has no bearing on whether an out-of-network, nonemergency services provider is entitled to a usual, customary, and reasonable rate for services it provided to a certain subscriber.

In *Gould*, *supra*, 4 Cal.App.4th 1059, Dr. Gould, a psychiatrist in West Los Angeles, treated employees who had sustained industrial psychiatric injuries during their employment as police officers. Dr. Gould submitted bills for his services that exceeded the medical fee schedule adopted by the Division of Workers' Compensation. The Workers' Compensation Appeals Board (WCAB) found in favor of the employer ruling that the official medical fee schedule should be used " '[i]n the absence of a showing of extraordinary factors justifying higher fees.' " (*Id*. at p. 1064.)

The Court of Appeal annulled the WCAB decisions. The court concluded the WCAB had applied an incorrect burden of proof in deciding whether Dr. Gould was entitled to fees in excess of the schedule. The court remanded the matter for a determination of whether Dr. Gould's fees for the psychotherapy sessions were

14

reasonable. The court stated that, in deciding whether fees in excess of the schedule were reasonable, "the WCAB may consider evidence regarding the medical provider's training, qualifications, and length of time in practice; the nature of the services provided; the fees usually charged by the medical provider; the fees usually charged in the general geographical area in which the services were rendered; other aspects of the economics of the medical provider's practice that are relevant; and any unusual circumstances in the case." (*Gould*, *supra*, 4 Cal.App.4th at p. 1071, fn. omitted.)

*Gould, supra,* 4 Cal.App.4th 1059 did not involve an out-of-network, nonemergency medical provider seeking a usual, customary, and reasonable rate for services provided to a health plan's subscriber. Instead, that case involved a psychiatrist treating police officers per a workers' compensation policy and submitting bills for his services that exceeded those allowed under the applicable fee schedule. In other words, *Gould* did not involve a dispute regarding a medical provider's entitlement to be paid by a health plan, but instead, the amount of fees a provider could charge for treating employees in the workers' compensation context. As such, *Gould* is not instructive in the instant action.

In summary, Pacific Bay has not shown that it was entitled to be paid by Blue Shield under section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations. Instead, subdivision (a)(3)(C) covers Pacific Bay's claim to payment here. (Cf. O*rthopedic Specialists of Southern California v. Public Employees' Retirement System* (2014) 228 Cal.App.4th 644, 648 (*Orthopedic Specialists*).) Per that subdivision,

15

any reimbursement Blue Shield owes Pacific Bay for treatment of the subscriber would be set forth in the applicable EOC. Yet, there is no mention of the EOC in the FAC.

In its opening brief, Pacific Bay neither discusses Blue Shield's EOC nor cites to section 1300.71, subdivision (a)(3)(C) of title 28 of the California Code of Regulations. Perhaps realizing this oversight, Pacific Bay addresses subdivision (a)(3)(C) in its reply brief. However, Pacific Bay does not argue that it was entitled to reimbursement of its claims per the EOC's terms. Nor does it assert that it could allege additional facts that Blue Shield improperly reimbursed its claims under the EOC. Instead, Pacific Bay argues that the subject regulation conflicts with its authorizing statute, and thus, is void. We disagree.

Pacific Bay's challenge to the Claims Settlement Practices regulation is based on a faulty premise. Pacific Bay claims that Blue Shield, relying on *Orthopedic Specialists*, *supra*, 228 Cal.App.4th 644, asserted it could "arbitrarily specify" in its EOC that claims of "noncontracted, nonemergent providers shall not be paid, period." However, Blue Shield makes no such claim. Instead, Blue Shield cites *Orthopedic Specialists*, contending that case dispelled the "notion that disallowing quantum meruit recovery for non-contracted, non-emergency providers, who cannot allege that the plan requested or benefited from the services, is unfair to the provider[.]"

In *Orthopedic Specialists*, *supra*, 228 Cal.App.4th 644, the plaintiff (a noncontracted, nonemergency provider) acknowledged that the issue of payment for nonemergency services provided by an out-of-network provider is governed by the relevant EOC as mandated by section 1300.71, subdivision (a)(3)(C) of title 28 of the

16

California Code of Regulations. (*Orthopedic Specialists*, *supra*, at p. 648.) Nevertheless, the plaintiff argued that the EOC set forth too low a payment for its services. As such, the plaintiff argued that the subject EOC should require payment of the usual, customary, and reasonable rate charged by an out-of-network provider for nonemergency services. The appellate court disagreed, noting that the EOC allowed the health plan to determine itself what was the appropriate amount to pay an out-of-network provider for nonemergency services. The court observed: "But just because [the plaintiff] believes that the EOC's provisions are unfair does not mean the provisions can be ignored or that they are unenforceable. The contract says what it says." (*Ibid.*) In addition, the court pointed out that the EOC allowed the plaintiff to seek the unpaid amount from the subscriber. (*Ibid.*) We see nothing in *Orthopedic Specialists* that calls into question the validity of section 1300.71, subdivision (a)(3)(C) of title 28 of the California Code of Regulations. To the contrary, that case states that Blue Shield is permitted to set the payment terms for a nonnetwork, nonemergency provider (like Pacific Bay) in the EOC.

The remainder of Pacific Bay's argument that the subject regulation is void fares no better. Pacific Bay maintains that a health care service plan is prohibited from engaging in an unfair payment pattern. (§ 1371.37, subd. (a).) It also insists that reducing the amount of payment or denying complete and accurate claims constitutes an unjust payment pattern. (§ 1371.37, subd. (c)(2).) Pacific Bay then notes that the regulation provides a list of 20 practices that would qualify as an unfair payment plan, but does not include "denying complete and accurate claims." (See Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(8)(A)-(T).) Pacific Bay thus argues that the regulation is invalid as

17

it alters or amends the authorizing statute because it does not specifically list "denying complete and accurate claims" as an unfair payment plan. We are not persuaded.

The portion of the regulation on which Pacific Bay relies clearly covers a health plan that does not correctly pay proper claims. (See Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(8) ["A 'demonstrable and unjust payment pattern' or 'unfair payment pattern' means any practice, policy or procedure that results in repeated delays in the adjudication and correct reimbursement of provider claims."].) Moreover, to the extent Pacific Bay is concerned that section 1300.71 of title 28 of the California Code of Regulations somehow undermines the Knox-Keene Act, specifically section 1371.37, we note that the regulation explicitly states that a plan must comply with the requirements of section 1371.37, among other sections, of the Health and Safety Code. (See Cal. Code Regs., tit. 28, § 1300.71, subd. (s)(2).) Therefore, we determine that neither subdivision (a)(3)(C) nor subdivision (a)(8)(A)-(T) of section 1300.71of title 28 of the California Code of Regulations improperly alters, amends, enlarges, or impairs the Knox-Keene Act. Accordingly, we are left with the fact that Pacific Bay's entitlement to payment here for the services it provided to Blue Shield's subscriber is governed by section 1300.71, subdivision (a)(3)(C) of title 28 of the California Code of Regulations. It is clear that, under the applicable regulation, Blue Shield's EOC determines the amount Pacific Bay is to be reimbursed, if any, in this matter.

Although it had the opportunity to address this issue in the superior court below and in its opening and reply briefs here, Pacific Bay did not mention the relevant EOC whatsoever. Pacific Bay did not discuss section 1300.71, subdivision (a)(3)(C) of title 28

18

of the California Code of Regulations in its opening brief. Instead, Pacific Bay devoted the lion's share of its argument to the theory that it was entitled to its usual, customary, and reasonable rate for services under 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations. In the face of strong argument by Blue Shield that subdivision (a)(3)(B) did not apply to Pacific Bay, Pacific Bay, in its reply brief, all but abandons its argument under the Claims Settlement Practices regulation and contends that its common law claims for quantum meruit and breach of implied contract should have survived demurrer. In this sense, with little explanation and no relevant authority, Pacific Bay asks this court to ignore the regulation governing claims settlement and reimbursement under the Knox-Keene Act. The same regulation it claimed, in its opening brief and two oppositions to demurrers, required Blue Shield to pay Pacific Bay its usual, customary, and reasonable rate.

For example, in its opening brief, Pacific Bay maintains it is entitled to quantum meruit as set forth in *Children's Hospital*, *supra,* 226 Cal.App.4th 1260. In that case, a hospital sued a health care service plan for breach of an implied-in-fact contract to reimburse it for the reasonable value of the poststabilization emergency medical services rendered to Medi-Cal beneficiaries. (*Id.* at p. 1264.) Among other issues, *Children's Hospital* concerned whether the factors stated in section 1300.71, subdivision (a)(3)(B) of title 28 of the California Code of Regulations were the sole factors relevant in determining the reasonable and customary value of the hospital's services. The court determined that those factors were not exclusive, and that a court could admit a "wide variety" of evidence to determine the reasonable value. (*Children's Hospital*, *supra*, at

19

p. 1274.)  That case, however, did not address an out-of-network, nonemergency service provider seeking quantum meruit.  Further, *Children's Hospital* did not address section 1300.71, subdivision (a)(3)(C) of title 28 of the California Code of Regulations whatsoever.  In short, *Children's Hospital* does not support Pacific Bay's argument it is entitled to the usual, customary, and reasonable rate for its services.[5]

In its reply brief, Pacific Bay finally addresses the elements of a quantum meruit cause of action and the allegations in the complaint.  Quantum meruit permits the recovery of the reasonable value of services rendered.  (*Palmer v. Gregg* (1967) 65 Cal.2d 657, 660.)  To recover in quantum meruit, the "plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant"; further, the defendant must have " 'retained [the] benefit with full appreciation of the facts . . . .' "  (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 248.)  However, quantum meruit recovery is inappropriate where it would frustrate the law or public policy.  (*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315.)

Here, Pacific Bay is using quantum meruit to recover something to which it is not entitled under the Knox-Keene Act or its applicable regulations.  As we discuss above, the amount Blue Shield owed Pacific Bay for treatment of the subscriber is limited by the

---

5    In its opening brief, Pacific Bay neither discusses the elements of a quantum meruit claim nor explains how the allegations in the FAC stated a valid quantum meruit claim.

20

applicable EOC. (See *Orthopedic Specialists*, *supra*, 228 Cal.App.4th at p. 648.) Pacific Bay ignores this issue. Instead, it simply decrees it was not paid enough and offers conclusory allegations that Blue Shield requested Pacific Bay treat the subscriber. In addition, Pacific Bay claims it was led to believe it "would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges." Pacific Bay does not offer more detailed allegations that Blue Shield authorized a certain amount of treatment or agreed to pay a specific rate. And the superior court provided Pacific Bay with the opportunity to do so. It did not take advantage of this opportunity. We thus conclude that Pacific Bay cannot offer additional factual allegations that could give rise to a valid quantum meruit claim. This is especially true here where the enforcement of the quantum meruit claim would frustrate the Claims Settlement Practices regulation. (See *Dinosaur Development, Inc. v. White*, *supra*, 216 Cal.App.3d at p. 1315.)

Pacific Bay's breach of implied contract claim fares no better than its quantum meruit cause of action.[6] "[T]he vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration. As to the basic elements, there is no difference between an express and

_____

[6] On appeal, Pacific Bay only addresses two of its six causes of action. In its reply brief, it discusses estoppel within the context of its quantum meruit claim. We need not address the estoppel claim because it was raised for the first time in the reply brief. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., *supra*, 78 Cal.App.4th at pp. 894-895, fn. 10.) That said, Pacific Bay has not stated a cause of action for estoppel because it has not alleged a promise clear and unambiguous in its terms. (See *Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 1661, 1672.)

21

implied contract. While an express contract is defined as one, the terms of which are stated in words (Civ. Code, § 1620), an implied contract is an agreement, the existence and terms of which are manifested by conduct (Civ. Code, § 1621). . . . [B]oth types of contract are identical in that they require a meeting of minds or an agreement [citation]. Thus, it is evident that both the express contract and contract implied in fact are founded upon an ascertained agreement or, in other words, are consensual in nature, the substantial difference being in the mode of proof by which they are established [citation]." (*Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 275.)

Pacific Bay maintains that it pled an implied contract in two ways. First, it argues Blue Shield's conduct of paying a portion of the invoices Pacific Bay submitted shows the existence of an implied contract. Not so. The fact that Blue Shield only paid for six of the 31 days of treatment undermines Pacific Bay's claim that the parties ever agreed to the same contractual terms. By way of Blue Shield's conduct, it appears that it believed it was to pay for only six days. In contrast, Pacific Bay argues that it was to be paid for the entire length of treatment. Thus, the allegations in the FAC, based on Blue Shield's payment of some of the invoices, does not exhibit any mutual intent as to the essential terms of the implied contract.

Second, Pacific Bay contends that it properly alleged the elements of an implied contract in paragraphs 13 and 14 of the FAC. In paragraph 13, Pacific Bay alleged that it "contacted Blue Shield to obtain prior authorization, pre-certification and consent to render treatment and perform procedures upon" the subscriber. "At all relevant times,

22

[Pacific Bay] was advised by representatives of Blue Shield that the [subscriber] was insured, covered, and eligible for coverage under the respective Plan or Policy for the services to be rendered by [Pacific Bay], at facilities operated by [Pacific Bay] and that [Pacific Bay] would be paid for performance of the procedures, care, and/or treatment rendered by Blue Shield." In paragraph 14, Pacific Bay further averred that it "was led to believe that it would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges."

These allegations lack the specific facts required for us to determine there was any meeting of the minds between the parties. At best, Pacific Bay's allegations show that Blue Shield admitted that the subscriber was covered under one of its health plans and that it would pay something for Pacific Bay's treatment of the subscriber. What type of treatment or the extent of treatment is not described. In addition, it does not appear the parties reached any sort of agreement as to the rate Blue Shield would pay Pacific Bay. Indeed, Pacific Bay alleged it was led to believe Blue Shield would pay "a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges." Blue Shield did pay a portion of the billed charges, but Pacific Bay argues it was not enough. However, we cannot say Blue Shield's payments breached any implied contract because there is no indication in the FAC what exactly Blue Shield agreed to pay.

In conclusion, as an out-of-network, nonemergency service provider, Pacific Bay was entitled to payment for treating Blue Shield's subscriber under the terms of the applicable EOC. (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B); *Orthopedic*

23

*Specialists*, *supra*, 228 Cal.App.4th at p. 648.) Pacific Bay has not alleged that Blue Shield paid it improperly under the EOC. Nor does Pacific Bay argue that it can allege additional facts to support such a claim. Against this backdrop, Pacific Bay's other allegations do not give rise to any valid cause of action. Put differently, Pacific Bay has not alleged any facts that remove this payment dispute from the confines of the Knox-Keene Act and/or the Claims Settlement Practices regulation. Moreover, it does not argue that it could do so if given another opportunity.

DISPOSITION

The judgment is affirmed. Blue Shield is awarded its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

HALLER, J.

Filed 5/31/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PACIFIC BAY RECOVERY, INC., | D070561 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2015-00024215-CU-CO-CTL ) |
| CALIFORNIA PHYSICIANS' SERVICES, INC., | |
| Defendant and Respondent. | |

THE COURT:

The opinion filed May 19, 2017, is ordered certified for publication.

HUFFMAN, Acting P. J.

Copies to: All parties