Filed 8/21/23  Williams v. American Airports Corporation CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WINN WILLIAMS et al.,<br><br>　　Plaintiffs, Cross-defendants,<br>　　and Appellants,<br><br>　　v.<br><br>AMERICAN AIRPORTS<br>CORPORATION,<br><br>　　Defendant, Cross-complainant,<br>　　and Respondent. | B321408<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV42610) |

APPEAL from an order of the Superior Court of Los Angeles County, Kristin S. Escalante, Judge.  Affirmed.

Kassouni Law and Timothy V. Kassouni for Plaintiffs, Cross-defendants, and Appellants.

Cunningham Swaim, Michael J. Terhar, and Jonathan E. Hembree for Defendant, Cross-complainant, and Respondent.

_____

The sole issue in this appeal is whether the trial court erred in denying a motion filed under Code of Civil Procedure section 425.16 (the anti-SLAPP law, hereafter section 425.16) by appellants Winn Williams and Sherlyn Williams to strike a cross-complaint filed by respondent American Airports Corporation.[1] We conclude the court did not err.

The Williamses were members of non-party Port Hangar Association, Inc. Port Hangar Association leased space on an airport owned by the County of Los Angeles and managed by American Airports. Port Hangar Association subleased this space to individuals, including the Williamses, who placed portable aircraft hangars on the space.

Shortly before the master lease was set to expire, the Williamses filed a complaint with the Federal Aviation Administration (FAA), contending that the refusal of the County and American Airports to negotiate a lease renewal violated both FAA grant assurances and federal law. Six months after the FAA denied the complaint, Winn Williams attended several meetings of the County Aviation Commission, criticizing both American Airports and the County, and reporting his difficulties with vacating the space the Williamses had been subleasing. Eventually, after American Airports removed their portable hangars and the personal property stored therein, the Williamses sued both American Airports and the County for inverse condemnation, conversion, discrimination, and negligent infliction of emotional distress.

---

[1] "The acronym 'SLAPP' stands for 'strategic lawsuit against public participation.'" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 473, fn. 1.)

In a cross-complaint, American Airports alleged that the Williamses' dilatory tactics and misrepresentations regarding their intentions to vacate the space they had subleased ultimately caused American Airports to incur more than $30,000 in costs in evicting them and removing and storing their property. American Airports alleged causes of action for breach of the lease agreement, breach of the covenant of good faith and fair dealing, quantum meruit, and promissory estoppel.

In response, the Williamses filed a motion to strike the cross-complaint under the anti-SLAPP law, contending the cross-complaint arose from the Williamses' FAA complaint and Winn Williams's statements to the County Aviation Commission. The trial court disagreed, finding that the Williamses had failed to show that the cross-complaint was based on activity protected by the anti-SLAPP law. We agree with the trial court and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

A. *The Williamses' Complaint*

In November 2020, the Williamses sued American Airports and the County. In April 2021, the Williamses filed a first amended complaint, and in September 2021, they filed a second amended complaint (SAC, the operative complaint). The SAC alleged that, in August 1997, Port Hangar Association entered a 15-year lease (with an option to renew for five years) with the County, leasing "vacant blacktop paved lots" on Brackett Field Airport and subsequently subleased smaller sections of the lots to

---

[2] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

3

Port Hangar Association members.  The Williamses placed portable hangars on the space they subleased.

In 2002, American Airports "became the authorized agent for the County . . . with respect to management and operations" at the airport.  In 2012, Port Hangar Association renewed the lease for another five years.

In September 2018, after the lease had expired, American Airports served Port Hangar Association with a 30-day notice to quit.

In January 2019, American Airports filed an unlawful detainer action against Port Hangar Association; a judgment for possession was entered in February 2019.  The Williamses alleged the judgment did not apply to them, and that American Airports continued accepting rent from them until May 2019.

In June 2019, American Airports refused to accept further payments and claimed the Williamses had no right to keep their portable hangars at the airport because Port Hangar Association had been evicted.  American Airports demanded the Williamses remove their hangars and property from the airport.  The Williamses claimed they were trying to comply, but American Airports made it difficult for them by removing their access to the airport on several occasions, and by placing its own locks on the Williamses' portable hangars.  Nevertheless, the Williamses rented one County-owned hangar to temporarily store one of their planes and most of their property before they moved to another airport, and asked American Airports to rent them another hangar.  They specifically requested a vacant hangar near their portable hangars, arguing they were entitled to accommodation because both Williamses were cancer survivors and neither Williams could walk very far.

American Airports refused to rent them a hangar and let them know that both the County and American Airports wanted their portable hangars removed by the end of October 2019 for a public repaving project that would affect the space they were using. Sometime in October 2019, American Airports and the County removed the personal property from the Williamses' portable hangars and destroyed the hangars. Thereafter, American Airports refused to tell the Williamses in writing where their property had been stored.

In April 2020, American Airports provided written notice as to the location of the Williamses' personal property, along with instructions on how to retrieve the property. American Airports also informed the Williamses it would not rent a hangar to them because "Mr. Williams has caused issues in the past and is difficult to handle."

Based on these allegations, the SAC set forth causes of action for inverse condemnation against the County, and conversion, discrimination under Civil Code sections 51 and 52, and negligent infliction of emotional distress against both defendants.

### B.   *The Cross-Complaint*

In December 2021, American Airports answered the SAC and brought a cross-complaint against the Williamses. The cross-complaint alleged that, in September 2018, a 30-day notice to quit was served on the Williamses. When the Williamses began then sending checks directly to American Airports, the checks stated they were for " 'tie-downs' " and American Airports did not realize the Williamses were attempting to create a new month-to-month tenancy. When American Airports realized the purpose of these payments, it refunded the money.

5

American Airports made numerous attempts to have the Williamses vacate the premises. In November 2018, Winn Williams "expressly agreed" to clear out the contents of his hangars. In December 2018, as part of an attempt to help the Williamses vacate, American Airports offered to lease a hangar to Winn Williams to store an aircraft, but informed him that the rest of his personal property needed to be removed from the airport. American Airports understood that this hangar would be used for " 'aviation purposes' . . . and not as a storage unit for nonaviation purposes or for hoarding."[3] However, American Airports alleged that the Williamses stored only one non-airworthy aircraft that had not been flown for decades, and thus was not using the hangar for aviation purposes.

In January 2019, American Airports filed an unlawful detainer action, obtaining judgment in February 2019. In March 2019, after the Williamses "still had not made any reasonable effort to vacate the premises . . . , the sheriff executed a lock out pursuant to the Unlawful Detainer judgment and the Williams[es] were notified of their rights to reclaim their abandoned property." In May 2019, the Williamses "were advised of a possible public auction of their personal property and were given fifteen (15) days to remove their property pursuant to the terms of the Lease Agreement." However, after Winn Williams promised "he was 'moving expeditiously' to remove his personal property," American Airports refrained from auctioning off the Williamses' property. In September 2019, after the Williamses still had not removed their property, American

---

[3] The rental rate for a hangar used for aviation purposes was "significantly lower" than the rate for non-aviation purposes.

Airports hired a professional moving company to move the property into shipping containers, stored on airport grounds.

Based on these allegations, the cross-complaint alleged that the Williamses breached the lease agreement by failing to vacate the leased premises; failing to remove their personal property from the leased premises; failing to reimburse American Airports for the removal and storage of the Williamses' property; and failing to pay the proper rate for using a hangar to store non-aviation property.

The cross-complaint also alleged the Williamses breached the covenant of good faith and fair dealing inherent in the lease agreement by (1) "Intentionally interfering with the business affairs of the County and Cross-Complainant with respect to the County's planned re-pavement project that was expected to take place on the subject premises"; (2) "Requesting multiple extensions of time and accommodations to perform their duties under the contract, namely removing their portable hangars and contents therein from the premises for an anticipated re-pavement project thereon, without any good faith effort to remove or relocate"; (3) "Misrepresenting on numerous occasions to Cross-Complainant that Cross-Defendants would vacate the premises when they had no intent to do so and unnecessarily prolonging the removal of the portable hangars and other personal property on the subject premises"; (4) "Engaging in dilatory conduct, despite Cross-Complainant's numerous accommodations, in vacating the subject premises and removing their property thereon and frustrating the reasonable expectation of the County and Cross-Complainant pursuant to the Lease Agreement"; and (5) "Attempting to extort Cross-Complainant and County to lease multiple permanent County-owned hangars

7

to them at Brackett Airport by refusing to timely remove their portable hangars and items therein from the premises, with knowledge of the potential harm to Cross-Complainant and the County for failure to do so as a result of the planned re-pavement project to take place on the subject premises."[4]

The cross-complaint additionally alleged a cause of action for quantum meruit for the costs incurred by American Airports in removing and storing the Williamses' property. Finally, the cross-complaint alleged a cause of action for promissory estoppel, claiming that because American Airports relied on the Williamses' false promises to vacate, it incurred costs after it was forced to file an unlawful detainer action and remove and store the Williamses' property. American Airports requested compensatory damages in excess of $30,000.

### C.    *The Williamses Move to Strike the Cross-Complaint*

In February 2022, the Williamses answered the cross-complaint. Three weeks later, they filed a special motion to strike under section 425.16, arguing that the cross-complaint arose from acts in furtherance of the Williamses' right of petition or free speech in connection with a public issue. Specifically, the Williamses claimed American Airports' cross-complaint arose from "comments made by Winn Williams during the public comment portion of the L.A. County Airport Commission meetings" and "from the Williamses' protected petitioning

---

[4] The allegations for the breach of the covenant of good faith and fair dealing were included under the first cause of action for breach of contract, rather than as a separate cause of action.

8

activity of speaking out to the FAA." The Williamses claimed American Airports' breach of contract action was based on the comments to the Airport Commission because the cross-complaint "refers specifically to Cross-Defendants' requests for extensions of time, their references to request for accommodation for their disabilities, and their requests to rent additional hangars," which "interfered with [American Airports'] business and amounted to extortion." While the Williamses claimed that "an FAA complaint was filed to prevent removal of the hangars," they did not explain how the cross-complaint arose from the FAA complaint.

The Williamses also did not explain how the quantum meruit cause of action arose from their petitioning activity, arguing only that "the petitioning activity itself—the opposition to removal of the hangars and other property—shows that [American Airports] cannot prevail on its claim for quantum meruit" because "[n]ot only did Winn and Sherlyn Williams NOT request the removal and relocation of their property, they vocally, repeatedly, and unequivocally objected to it" and filed "an FAA complaint . . . to prevent removal of the hangars . . . ."

Finally, as to the promissory estoppel cause of action, the Williamses argued it was based on their request for additional time to vacate the premises, which was a "request . . . made in public comments at a public hearing to [American Airports] as the agent of the County" and was "therefore protected petitioning activity." The Williamses also argued none of the causes of action had merit.

In March 2022, American Airports opposed the motion, arguing that just because it filed its cross-complaint after Winn Williams had engaged in protected activity did not mean the

causes of action arose from that activity. American Airports contended that the motion to strike failed to address the "main thrust of the breach of contract cause of action" which was that "the Lease Agreement expired, and Cross-Defendants refused to move, despite the lease expiring, despite [American Airports] serving a valid notice to quit, despite [American Airports] obtaining and validly serving an Unlawful Detainer Judgment in February 2019, and despite [American Airports] offering to allow an extra 120 to move and offering to perform the physical move for free (offers which were not accepted)." American Airports argued that the Williamses' conduct did not constitute protected activity.

As to its cause of action for quantum meruit, American Airports contended the Williamses had failed to show it arose from any protected activity. Finally, as to the promissory estoppel cause of action whereby American Airports contended the Williamses had asked for more time to vacate the hangar, American Airports contended its cross-complaint never alleged the Williamses made these requests at a public hearing, and instead alleged they had made multiple promises directly to American Airports to vacate the space. American Airports also argued there was a "strong probability" it would succeed on the merits.

The Williamses filed a reply brief, reiterating that the basis of American Airports' cross-complaint was statements made by Winn Williams at a public hearing, and arguing that even if some of the activity underlying American Airports' claim was unprotected, the cross-complaint was still subject to a special motion to strike because the protected activity was not "merely

10

incidental but an essential part of the alleged activity upon which liability arises."

### D. *The Court Denies the Williamses' Motion*

In March 2022, the court denied the Williamses' motion. It found that American Airports' "Cross-Complaint does not base any liability on Plaintiffs' petitioning activity" and that the allegedly protected activity (complaints to the FAA and the County) "does not relate to the basis of liability." The court expressly found that: "The [Cross-Complaint] is completely silent on any of the cited complaints to the FAA or the County. Instead, the [Cross-Complaint] seeks liability based on alleged breaches of contract which are disconnected from any presented petitioning activity. (CC ¶¶ 51–57 [The Williams[es] failed to remove their hangars/personal property as required by the lease and delayed the re-pavement project without any legal grounds]; ¶¶ 61–63 [seeking reimbursement for expenses related to the removal of Plaintiffs' personal property]; ¶¶67–84 [cross-complainants relied on the Williams[es]' promises to voluntarily vacate the premises at their own expense and their purported needs for accommodations to vacate the premises, and thereby provided Cross-Defendants with certain accommodations at the cross-complainants' expense].) Thus, the [Cross-Complaint] does not seek any liability based on Plaintiffs' petitioning activities." Because the court found that the Williamses failed to meet their burden to demonstrate that the activity complained of was protected under the anti-SLAPP law, it declined to consider whether American Airports' causes of action were legally sufficient.

The Williamses timely appealed.

11

## DISCUSSION

"The grant or denial of an anti-SLAPP motion is reviewed de novo." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) Our Supreme Court has summarized the two-step analysis required by the anti-SLAPP statute as follows: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. . . . If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

"At the first step of the analysis, the defendant must make two related showings. Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887.) In other words, the party seeking to strike a claim must show that it arises from protected activity. (See *id.* at pp. 884, 887–888.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.)

"Motives are irrelevant under section 425.16, and 'a claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic.' [Citation.]

12

'That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such.' " (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493–494, quoting *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "In other words, a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim. [Citation.] Rather, the protected activity must 'supply elements of the challenged claim.' " (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621, quoting *Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at pp. 1063, 1064.)

### A. *Breach of the Covenant of Good Faith and Fair Dealing*

American Airports alleged that the Williamses breached the covenant of good faith and fair dealing inherent in the lease agreement by: (1) intentionally interfering with American Airports' business affairs with respect to the repaving project; (2) requesting multiple extensions of time and accommodations to vacate without expending any good faith effort to vacate; (3) misrepresenting on numerous occasions to American Airports that they would vacate the premises without actually intending to do so; (4) engaging in dilatory conduct in vacating the space and removing their property; and (5) trying to force American Airports and the County to lease multiple permanent County-owned hangars to them by using their refusal to timely remove their portable hangars and items from the space.

On appeal, the Williamses argue that, because "[e]ach of these alleged statements and actions advanced the Williamses' efforts to obtain relief from the FAA and the County Aviation

13

Commission," their activity was protected under section 425.16, subdivisions (e)(1), (e)(3), and (e)(4). We disagree.

> ### 1.    Section 425.16, subdivisions (e)(1) and (e)(3)

Section 425.16, subdivisions (e)(1) and (e)(3), provide that an " 'act in furtherance of a person's right of petition or free speech' " includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." The Williamses argue that these subdivisions apply because the statements and conduct in the five allegations American Airports made "arose in official proceedings authorized by law" and "in public forums, including the FAA and the County Aviation Commission." Their argument is unsupported by the allegations in the cause of action.

The first, fourth, and fifth allegations (intentionally interfering with the business affairs of the County and American Airports regarding the repaving project, engaging in dilatory conduct in vacating the premises, and attempting to force American Airports and the County to lease certain hangars to the Williamses by weaponizing their refusal to timely vacate) concern the Williamses' failure to vacate in a timely manner the premises where the repaving project was to take place. Failing to vacate is self-evidently not a written or oral statement or writing.

And while the second and third allegations (requesting multiple extensions of time to vacate the premises without making a good faith effort to vacate and misrepresenting their intentions to vacate) involve statements, the Williamses cite

14

nothing to demonstrate these were statements made before a legislative, executive, or judicial proceeding, or in a public forum. Indeed, the cross-complaint alleged the Williamses "[m]isrepresent[ed] on numerous occasions *to Cross-Complainant* that Cross-Defendants would vacate the premises." (Emphasis added.)

Because the statements and conduct alleged were not statements made before a legislative, executive, or judicial proceeding, or in a public forum, they are not protected activity under section 425.16, subdivisions (e)(1) or (e)(3).

### 2. Section 425.16, subdivision (e)(4)

The Williamses also contend the conduct and statements complained about constituted protected activity under section 425.16, subdivision (e)(4). Subdivision (e)(4) states that protected activity includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) We reject the argument that the conduct and statements alleged in the cross-complaint were "made in furtherance of [the] Williamses' free speech and petitioning rights to obtain relief from the FAA and the County Aviation Commission on issues relating to a public airport that serves vital public purposes."

While the Williamses claim they "filed a formal complaint with the FAA alleging that the County and [American Airports'] refusal to negotiate a renewal of the Lease violated their obligations under FAA grant assurances and federal law," and that Winn Williams "attended seven open meetings of the County Aviation Commission in which he made public comments criticizing the County and [American Airports] for their operation

15

and management of the Airport," neither the FAA complaint nor Winn Williams's attendance at open meetings was mentioned in the cross-complaint.

" '[T]he issues in an anti-SLAPP motion are framed by the pleadings.' [Citations.] Thus, the act or acts underlying a claim for purposes of an anti-SLAPP statute is determined from the plaintiffs' allegations. [Citation.] Because the issues to be determined in an anti-SLAPP motion are framed by the pleadings, we will not 'insert into a pleading claims for relief based on allegations of activities that plaintiffs simply have not identified . . . . It is not our role to engage in what would amount to a redrafting of [a] complaint in order to read that document as alleging conduct that supports a claim that has not in fact been specifically alleged, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it.' " (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883, italics omitted.) Nothing in the record indicates the misrepresentations American Airports complained of were made in the FAA complaint or in the open meetings before the County Aviation Commission.

Even were we to consider the FAA complaint and Winn Williams's public comments, the Williamses fail to demonstrate how the conduct alleged in the cross-complaint was done in furtherance of the complaint or those comments. "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." (*Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 143.) Making misrepresentations to American Airports about their intentions to vacate the premises did not help the Williamses advance their complaint that American Airports violated FAA

16

grant assurances and federal law by refusing to negotiate a renewal of the lease agreement—especially when the Williamses admit the FAA denied their complaint in August 2018 and American Airports alleged that it was in November 2018 when Winn Williams "expressly agreed" to clear out the contents of his hangars and in May 2019 when he claimed to be " 'moving expeditiously' to remove his personal property." Nor do we see how the Williamses' foot-dragging advanced their right to criticize the County and American Airports, or assisted them in exercising that right. American Airports' cause of action for breach of the covenant of good faith and fair dealing was not based on an FAA complaint or the Williamses' critical comments, but rather on their failure to vacate the premises and the misrepresentations they made to American Airports about vacating the premises. Therefore, we agree with the trial court that the alleged conduct is not covered under section 425.16, subdivision (e)(4).

### B.    *Quantum Meruit*

The cross-complaint alleges that, because the Williamses repeatedly failed to move their portable hangar and personal property from the premises, American Airports was required to do it for them, and "[t]he reasonable value of the services performed by Cross-Complainant in conferring the aforesaid benefits to Cross-Defendant is in excess of $30,000.00."

Quoting *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, the Williamses contend on appeal that "[t]o prevail on its quantum meruit claim," American Airports must demonstrate it " 'was acting pursuant to either an express or implied request for such services from the defendant . . . .' " (*Id.* at p. 214, italics removed.) The Williamses

17

contend that any request they purportedly made for services "was included among Winn Williams'[s] statements to the County Aviation Commission regarding the difficulties he and Sherlyn Williams were experiencing in relocating their portable hangars and other property due to the County and [American Airports'] conduct" and therefore the quantum meruit claim "necessarily arises from protected speech and petitioning activity." The Williamses' argument misses the mark.

American Airports does not contend the Williamses made an express request for it to remove and store their belongings. The cross-complaint made clear that the Williamses refused to remove their property, despite offers from American Airports to help. Instead, American Airports alleged that it was forced to act due to the Williamses' failure to remove the property (i.e., that the Williamses' lack of action constituted an implied request for services). But the Williamses' failure to act does not constitute a statement Winn Williams made to the County Aviation Commission and is therefore not protected by the anti-SLAPP statute.

### C. *Promissory Estoppel*

In its final cause of action, the cross-complaint alleged that the Williamses "promised Cross-Complainant multiple times . . . that they would timely vacate the subject premises at their own expense." American Airports relied on that promise and incurred costs when the Williamses failed to honor their promise. The Williamses claim that their promise to vacate was "the subject of Winn Williams'[s] public comments to the County Aviation Commission" and therefore the alleged promise was communicated to American Airports "as part of the same

18

protected speech and petitioning activity" on which American Airports based its other causes of action. We disagree.

The Williamses claimed Winn Williams went to numerous meetings of the Los Angeles County Airport Commission to advocate for Port Hangar Association to enter into a new lease, and to criticize American Airports and the County. Meeting minutes submitted by the Williamses also reflected that Winn Williams made comments that they were "in the process" of vacating their hangar. But neither advocating for a lease renewal, nor criticizing American Airports' management, nor reporting that the Williamses were in the process of vacating their hangar constitutes a promise to vacate the hangar. Therefore, American Airports' promissory estoppel cause of action does not arise from Winn Williams's comments at the County Airport Commission and is not protected by the anti-SLAPP statute.

## DISPOSITION

The court's order is affirmed. Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.                    BENDIX, J.

19