Filed 2/29/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAMANTHA BERLANGA, et al., Plaintiffs and Appellants, v. UNIVERSITY OF SAN FRANCISCO, Defendant and Respondent. | A165976; A166231 (San Francisco City & County Super. Ct. No. CGC-20-584829) |

During the COVID-19 pandemic, numerous universities including respondent University of San Francisco (USF) transitioned to remote, online learning. Appellants Samantha Berlanga, Joseph Oliva, Jasmine Moore (jointly, student appellants), and Amber Kaiser sued USF alleging it breached its promise to provide in-person instruction and should refund a portion of their tuition payments. The trial court granted USF's motion for summary adjudication, concluding appellants failed to raise a triable issue of fact regarding whether USF promised to provide exclusively in-person instruction. We affirm.

**BACKGROUND**

Student appellants were enrolled at USF as undergraduate students in the spring 2020 semester. Prior to March 2020, they attended their USF classes in-person.

On March 4, 2020, Governor Gavin Newsom declared a state of emergency in response to the global outbreak of COVID-19, a new disease

caused by a "novel coronavirus."  That declaration emphasized the need to "mitigate the spread of COVID-19" due to concerns that "the number of persons requiring medical care may exceed locally available resources."  On March 16, 2020, the San Francisco Health Officer issued a shelter-in-place order requiring residents of San Francisco County to remain in their homes except when engaging in essential activities, and to stay at least six feet apart from other persons when leaving their homes.  A few days later, the Governor issued an executive order requiring all Californians to stay at home except for essential activities.

As a result, USF was prohibited by law from holding large in-person gatherings, and USF suspended all in-person instruction and closed its on-campus facilities.  USF announced all classes would transition to distance learning for the remainder of the semester.

In July 2020, USF announced instruction would be "primarily remote for the fall 2020 semester" due to a COVID-19 surge and California's delay in reopening plans.  USF informed students the San Francisco Department of Public Health "cannot tell us when we will receive clearance from the state to reopen campus for in-person instruction, so we are planning to conduct the entire fall semester remotely."  USF again informed students in October 2020 that the spring 2021 semester would also be conducted via distance learning.  Student appellants continued to attend USF during these semesters.

Appellants filed a complaint against USF alleging breach of contract, violation of the California Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.; UCL), quasi-contract, and promissory estoppel.  Appellant Oliva filed a separate action alleging breach of contract, unjust enrichment, and conversion.  Both complaints were filed as class actions.

These matters were consolidated into a single class action complaint for breach of contract, violation of the UCL, quasi-contract, and promissory estoppel. As relevant here, the consolidated complaint alleges "USF has not delivered the educational services, facilities, access and/or opportunities for which Plaintiffs and the proposed Class and Subclasses contracted and paid" as a result of the transition to remote learning due to the COVID-19 pandemic. It further asserts "[t]hrough the admission agreement and payment of tuition and fees, Plaintiffs and each member of the Class and Subclasses entered a binding contract with USF." The complaint asserts USF "promised to provide certain services" pursuant to this contract, and appellants were "entitled to in-person educational services."

USF moved for summary judgment or, alternatively, summary adjudication of the consolidated complaint. USF raised various arguments in support of its motion, including: (1) appellants failed to identify any specific promise by USF to provide them with in-person instruction "under all circumstances;" (2) USF was excused from providing any required in-person instruction by state and local orders related to COVID-19; (3) appellants cannot now seek to modify the terms of any contract with USF; (4) appellants failed to identify any practices by USF that violate the UCL; (5) appellants were aware USF would conduct classes either remotely or via a hybrid format during the Fall 2020 and Spring 2021 semesters prior to paying tuition; (6) appellant Kaiser lacked standing; and (7) appellants' arguments were barred by the doctrine of educational malpractice.

Appellants opposed the motion. They asserted a triable issue of fact existed regarding the terms of their contracts with USF. Appellants relied on the following statements from the admission letter to argue USF promised to provide in-person instruction: (1) " 'As a member of the USF community, you

3

will join a dynamic student body that represents a diversity of cultures, interests, thoughts, and experiences' "; (2) " 'You will be challenged intellectually and encouraged to put thought into action, an important tenet of the nearly 500 years of Jesuit educational tradition that underpins and guides USF' "; (3) " 'You will develop amazing friendships and expand your horizons, and you will be surrounded by the best city ever"; (4) "Please join us at one of our admitted student visit days . . . to meet your future classmates and experience the richness of our university' "; and (5) " 'The [USF] family of faculty, students, and staff welcomes you, and I personally look forward to greeting you on campus . . . .' "

Appellants also argued an implied-in-fact contract was formed based on conduct, custom, usage, and history. They contended USF's 165-year history of in-person instruction, the course syllabi referencing the physical location of in-person classes, the course descriptions in the course catalog, and the student schedules stating the physical locations and times of in-person classes all indicate USF represented itself as a "residential university, offering in-person instruction and on-campus facilities." Appellants noted none of these materials contained any reference to online instruction, and USF's general reservation of rights[1] cannot excuse its failure to provide promised services.

Appellants further argued USF's affirmative defenses of impossibility and educational malpractice were inapplicable, fact issues existed as to their UCL, quasi-contract, and promissory estoppel claims, and appellant Kaiser had standing.

---

[1] USF's catalog provides the information contained therein "is subject to change" and USF "reserves the right to revise its regulations and programs in accord with sound academic standards and requirements."

4

The trial court granted USF's motion as to the breach of contract, breach of the implied covenant of good faith and fair dealing, quasi-contract, and promissory estoppel causes of action, but denied it as to the UCL cause of action.[2] The court noted "[t]he fact and substance of Plaintiffs' admissions letters offering them admission to USF . . . are undisputed." The court explained the letters "do not contain any promise of in-person instruction, nor do they contain unqualified promises of *exclusively* in-person instruction even during an emergency like the COIVD-19 pandemic." The court likewise concluded other documents referenced by appellants, such as syllabi, student schedules, and course catalogs, do not contain and "cannot give rise to a binding agreement for in-person instruction." Accordingly, the trial court held appellants could not establish a breach "based on the failure to provide in-person instruction during the COVID-19 pandemic" or otherwise raise a triable issue of fact.

The court also concluded appellants could not sustain a quasi-contract claim because they challenged the terms of their contract with USF, not its existence. Finally, the court rejected appellants' promissory estoppel claim because "the undisputed evidence establishes that USF did not make clear and unequivocal promises" for in-person instruction.

Appellants requested the court dismiss the UCL cause of action with prejudice, which the court granted. They now appeal.

## DISCUSSION

### I. Standard of Review

"Summary judgment is appropriate when there are no triable issues of material fact such that the moving party is entitled to judgment as a matter

---

[2]     We do not address the court's holding on the UCL cause of action because that part of the ruling was not appealed.

of law on all causes of action." (*Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 318 (*Choi*).)

"We review an order granting summary judgment de novo, applying the same three-step analysis as the trial court. [Citations.] First, we identify the causes of action framed by the pleadings. Second, we determine whether the moving party has satisfied its burden of showing the causes of action have no merit because one or more elements cannot be established, or that there is a complete defense to that cause of action. Third, if the moving party has made a prima facie showing that it is entitled to judgment as a matter of law, the burden of production shifts and we review whether the party opposing summary judgment has provided evidence of a triable issue of material fact as to the cause of action or a defense. [Citations.] A party opposing summary judgment may not 'rely upon the allegations or denials of its pleadings' but must set forth 'specific facts' beyond the pleadings to show the existence of a triable issue of material fact. [Citation.] The evidence must be viewed in the light most favorable to the nonmoving party." (*Choi, supra*, 18 Cal.App.5th at p. 318.) We independently determine whether the record supports the trial court's conclusions that the asserted claims fail as a matter of law, and we are not bound by the trial court's stated reasoning or rationales. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

## II. Breach of Contract

The parties do not dispute that an implied-in-fact contract existed between USF and the appellant students, created via the students' matriculation and payment of tuition and based on some but not necessarily all the information USF provided to matriculants in its catalogs, bulletins, circulars, and/or regulations. Rather, the parties dispute whether that contract committed USF to provide exclusively in-person instruction.

6

A contract is either express, meaning it is stated in words, or implied, meaning its existence and terms are manifested by the conduct of the parties. As with any contract claim, a key element is the mutual assent of the parties to the contract. " '[T]he vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration. As to the basic elements, there is no difference between an express and implied contract. While an express contract is defined as one, the terms of which are stated in words (Civ. Code, § 1620), an implied contract is an agreement, the existence and terms of which are manifested by conduct (Civ. Code, § 1621). . . . [B]oth types of contract are identical in that they require a meeting of minds or an agreement [citation]. Thus, it is evident that both the express contract and contract implied in fact are founded upon an ascertained agreement or, in other words, are consensual in nature, the substantial difference being in the mode of proof by which they are established.' " (*Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 215.)

The question of whether the parties' conduct evidences an implied-in-fact contract is generally a question of fact for the trier of fact unless the underlying facts are undisputed and support only one conclusion. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 677, 682; *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1386–1387).

## A. The Parties' Implied-In-Fact Contract

"[T]he basic legal relationship between a student and a private university is contractual in nature." (*Kashmiri v. Regents of Univ. of California* (2007) 156 Cal.App.4th 809, 823–824 (*Kashmiri*) [a contract is created by the act of matriculation plus the payment of required fees].) However, courts "have recognized that contract law should not be strictly

7

applied. . . . Universities are entitled to some leeway in modifying their programs from time to time to exercise their educational responsibility properly." (*Id*. at p. 824) "Courts have applied contract law flexibly to actions involving academic and disciplinary decisions by educational institutions . . . . Courts also have been reluctant to apply contract law to general promises or expectations. [Citation.] Courts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction." (*Id*. at p. 826.)

*Kashmiri*, *supra*, 156 Cal.App.4th 809 provides a useful comparison in evaluating whether USF promised to provide exclusively in-person instruction. In *Kashmiri*, students alleged the university had promised not to impose certain fee increases on continuing students but rather only on new students. (*Id*. at pp. 815–816.) The students relied on three publications setting forth this "unequivocal" promise. (*Id*. at p. 833.) First, the Office of the President of the University's " ' "official guide for all University departments in the area of general University fees" ' " provided: "Increases in the Fee [for Selected Professional School Students] apply to new students only. The Fee will remain the same for each student for the duration of his or her enrollment in the professional degree program." (*Id*. at p. 816.) Second, in connection with its approval of the fee policy, the Regents of the University of California declared, " 'the level of the [challenged fee] remains the same for each student for the duration of his or her enrollment in the professional degree program, with increases in the fee applicable to new students only." (*Ibid*.) Finally, the university's annual budget documents stated, " 'the level of the [challenged fee] remains the same for each student for the duration of

8

his or her enrollment in the professional degree program, with increases in the fee applicable to new students only.' " (*Ibid.*)

In evaluating these statements, our colleagues in Division Two clarified that not all statements in university catalogs and bulletins amount to contractual obligations. "[L]ike all obligations imposed pursuant to implied contractual terms, the contractual obligations imposed by the language in catalogues 'center around what is reasonable.' " (*Id.* at pp. 828–829.) What is reasonable is based on the totality of the circumstances including the acts and conduct of the parties and the subject matter, and "the reasonableness of the student's expectation is measured by the definiteness, specificity, or explicit nature of the representation at issue." (*Id.* at pp. 831–832.) Applying these principles, the court concluded "it was reasonable for students to believe" the professional degree fees "would remain the same for the duration of that student's enrollment in the professional program." (*Id.* at p. 833.) The court thus held the university made a "specific promise" through its "unequivocal" statements, and not merely "a general statement or declaration." (*Ibid.*)

Here, by contrast, there are no comparable "unequivocal" statements. Appellants rely on the following evidence to assert a contractual term for in-person instruction: (1) statements inviting them to "join a dynamic student body," "develop amazing friendships," "be surrounded by the best city ever," and "join . . . one of our admitted student visit days," and (2) documents referencing the physical locations of classes.[3] Unlike the statements in

---

[3] Appellant Berlanga also testified she received a "verbal promise[]" from "whoever was giving me the tour" of USF that " '[t]his is where you'll spend your four years at . . . USF.' " She does not identify who made this alleged promise and what authority, if any, that individual had to contract on behalf of USF.

*Kashmiri* which specifically mentioned fees, none of these statements provide a specific promise of exclusive in-person instruction for the duration of the Spring 2020 semester.

Moreover, the statements in *Kashmiri* provided specific details regarding the scope of how and when the fee increases would be applied—i.e., fees would stay the same for the duration of a student's enrollment. (*Kashmiri, supra,* 156 Cal.App.4th at p. 816.) Here, even assuming the students were promised in-person instruction, appellants fail to identify the terms under which such in-person instruction and access to campus would be offered. (See e.g., *Kashmiri, supra,* 156 Cal.App.4th at p. 832 ["words, such as 'estimated' . . . were too indefinite to create a contractual obligation."].) Appellants do not assert such statements entitle them to 24/7 access to every building on campus. Nor do they assert that a change in class location, from one building to another, would constitute a contractual breach based on the course catalog. And, in fact, appellants Moore and Oliva testified they did not interpret the admission letter as promising in-person instruction during a health and safety emergency.

The generality of USF's statements is particularly pronounced when compared to the specific and repeat promises in *Kashmiri* regarding fee increases. At most, these statements, construed in a light most favorable to appellants, support the proposition that USF made sufficiently specific representations to infer a contractual promise to provide *some* in-person instruction and on-campus services in exchange for appellants' tuition. But the record does not support an inference of *exclusively* in-person instruction under the circumstances of a global health and safety emergency.

Appellants also fail to identify specific evidence of past conduct or custom to support their contract claims. While USF has generally provided

10

in-person instruction and access to its campus, appellants have not identified any evidence that USF has historically provided in-person instruction during public health or safety emergencies. Nor do they identify any evidence indicating an expectation that USF would offer in-person instruction during such emergencies.

In *Randall v. Univ. of the Pac.*, (N.D. Cal., May 28, 2022, No. 5:20-CV-03196-EJD) 2022 WL 1720085 (*Randall*)), the Northern District of California considered a similar claim arising from the failure to provide in-person instruction during the COVID-19 pandemic. (*Id.* at p. *2.) The plaintiff relied on general statements in university materials that referenced (1) consulting faculty advisors, (2) engaging in experiential learning, (3) accessing a personalized learning environment, and (4) engaging in collaboration, as well as documents identifying (1) campus locations for classes, (2) lab components of classes, (3) attendance policies, (4) an on-campus credit requirement, (5) residence policies, and (6) an "online" format designation for certain classes to support his breach of contract claim. (*Ibid.*) The court granted summary judgment, relying on *Kashmiri* to explain the plaintiff "must offer evidence of a specific, unequivocal promise by [the university] that it would provide in-person instruction and services. . . . Plaintiff uses various, vague statements in [the university's] promotional materials and course catalogs to demonstrate a specific promise. This is insufficient." (*Id.* at p. *6.) The court held these statements and publications "created an expectation that classes would be taught in-person and that students would be able to take advantage of a myriad of on-campus opportunities," but "do not contain any specific or identifiable promise that is adequate to support a breach of contract, even one implied in fact." (*Ibid.*) We agree with the *Randall* court's analysis.

11

We recognize some federal authorities have found comparable evidence sufficient to raise a fact issue regarding in-person instruction.[4] (See, e.g., *In re Pepperdine University Tuition and Fees COVID-19 Refund Litigation* (C.D. Cal. 2023) 659 F.Supp.3d 1086, 1094; *Arredondo v. University of La Verne* (C.D. Cal. 2022) 618 F.Supp.3d 937, 946.) We are not bound by these authorities and, in any event, find their reasoning flawed to the extent they rely on generalized statements regarding campus experiences or facilities. Such generalized statements fail to delineate the specific terms under which the universities were offering in-person instruction or campus access as required by California law. (See *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 ["If . . . a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract."]; *Ladas v. California State Auto. Ass'n* (1993) 19 Cal.App.4th 761, 770 ["To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance . . . ."].) And these cases assume the promise for in-person instruction was made without exception.

---

[4] Appellants also rely on various cases (1) decided at the motion to dismiss stage, or (2) outside California. We find those cases distinguishable because they either require a different evidentiary showing from the parties (see *Randall*, *supra*, 2022 WL 1720085 at p. *6 ["While this Court concluded at the motion to dismiss stage that Plaintiff had sufficiently alleged facts that *could* show a specific promise by Defendant to hold in-person instruction and services, at the summary judgment phase Plaintiff must provide evidence supporting his assertion that Defendant made express promises. Statements in the course catalog about the 'days and times' and the 'location' of courses are not express promises to provide in-person instruction."]) or do not apply California law.

While we recognize that all parties expected classes to be conducted in-person, those general expectations do not amount to an enforceable term of the parties' contract. (*Kashmiri, supra*, 156 Cal.App.4th at p. 832 [" 'At best, these words expressed an expectancy by the [educational institution] . . . . This is not a promise susceptible of enforcement.' "].) Interpreting general statements about campus life as binding contracts for in-person instruction or access to campus facilities without exception places universities in an impossible situation—violating state and/or local stay-at-home orders or breaching their contracts with students. We cannot conclude it is objectively reasonable that universities agreed to such an arrangement. (Accord *Vierra v. Workers' Comp. Appeals Bd.* (2007) 154 Cal.App.4th 1142, 1148 ["A contract must be lawful [citation]; i.e., it must not be in conflict either with express statutes or public policy.].)

The underlying facts are undisputed, and California law supports only one conclusion from this record: that appellants failed to raise a triable issue of fact as to whether USF contractually committed to offering exclusively in-person instruction during a global pandemic. Accordingly, the trial court did not err in granting summary adjudication of this claim.

## B. Appellants' Additional Challenges to the Court's Ruling on the Breach of Contract Claim

Appellants raise two additional arguments in connection with the court's ruling on their breach of contract claim. First, they assert the trial court erred by concluding their complaint only alleged breach of an express contract rather than an implied-in-fact contract. Second, appellants assert the court only relied on the admission letter rather than USF's past conduct in rejecting its implied-in-fact contract theory. Both arguments fail.

13

Contrary to the arguments in appellants' brief, the court did not reject their breach of contract claim based solely on an express contract theory. The court evaluated whether an implied contract was formed and concluded the various documents at issue, such as the admissions letter, syllabi, student schedules, and course catalogs, did not give rise to a binding agreement for in-person instruction. The court explained (1) these materials do not contain promises or definite offers to provide in-person instruction; (2) appellants failed to explain how professors could bind USF to contract terms by providing students with syllabi; and (3) documents such as syllabi and student schedules were not provided at the time of enrollment and thus could not have been part of the accepted offer.

Second, the court properly focused on the admissions letter because that document formed the basis for appellants' breach of contract allegations. The complaint states appellants entered into a binding contract with USF "[t]hrough the admission agreement and payment of tuition and fees." The complaint does not identify any other documents or conduct as either forming or supplementing the contractual relationship between the parties. Nor have appellants identified any "conduct" the trial court failed to consider. A plaintiff opposing summary judgment may not raise facts or legal theories not encompassed by his complaint to defeat a summary judgment motion. (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 & fn. 7 ["The complaint limits the issues to be addressed at the motion for summary judgment. The rationale is clear: It is the allegations in the complaint to which the summary judgment motion must respond."]; accord *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 246–247 [plaintiff alleging cause of action for an implied-in-fact contract must plead "the facts from which the promise is implied."].) Accordingly, the trial court properly

14

evaluated appellants' claims based on the complaint allegations, and appellants do not assert they ever sought to amend their complaint to conform to proof.

### C. Fall 2020 and Spring 2021 Semesters

In addition to contesting the switch from in-person to remote learning in the Spring 2020 semester, appellants assert they should receive tuition refunds for the ongoing remote instruction in the Fall 2020 and Spring 2021 semesters.

As USF correctly notes, appellants were aware these semesters would be conducted either entirely remotely or in a hybrid format prior to enrolling or paying tuition for those semesters. In May 2020, USF alerted students of the possibility that the Fall 2020 semester would be either remote or a hybrid format. In July 2020, USF informed students the Fall 2020 semester would primarily be remote. Tuition for that semester was not due until August 2020. Similar information was provided in advance of the Spring 2021 semester. Accordingly, appellants could not reasonably have believed USF contractually promised to provide an in-person education for the Fall 2020 and Spring 2021 semesters.

While appellants contend it would have been disruptive to pause their education or transfer to a different university, their breach of contract claim fails because they have not identified any contract with USF for in-person instruction during those semesters.

### D. Implied Covenant of Good Faith and Fair Dealing

"The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." (*Foley v. Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 690.) "Without a contractual

15

relationship, [a plaintiff] cannot state a cause of action for breach of the implied covenant." (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49.) "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153.) It "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349–350.)

As discussed above, the evidence does not raise a triable issue of fact as to whether the parties entered into an agreement for USF to provide exclusively in-person instruction under the circumstances of a global pandemic. USF's switch from in-person to remote instruction, as required by state and local stay-at-home orders, did not frustrate appellants' rights to any contract benefits and thus did not violate the implied covenant of good faith and fair dealing.

## III. Appellants' Remaining Claims

Appellants also challenge the trial court's order granting summary adjudication of their quasi-contract and promissory estoppel claims. We address each below.

### A. Quasi-Contract Claims

Appellants assert the trial court erroneously granted summary adjudication of its quasi-contract claim because parties may bring such claims when there is either no express contract or the contract is "unenforceable or ineffective for some reason."

16

A cause of action for quasi-contract "cannot lie where there exists between the parties a valid express contract covering the same subject matter." (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231; see also *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388 ["[a] plaintiff may not . . . pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."].) "[A] plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." (*Saroya v. Univ. of the Pac.* (N.D. Cal. 2020) 503 F.Supp.3d 986, 998; see also *Nguyen v. Stephens Inst.* (N.D. Cal. 2021) 529 F.Supp.3d 1047, 1057 [dismissing quasi-contract claim because plaintiff "alleges an enforceable contract existed . . . but fails to allege that the same contract was unenforceable or void."]; *Lindner v. Occidental Coll.* (C.D. Cal., Dec. 11, 2020; Case No. CV 20-8481-JFW), 2020 WL 7350212, at *9 [dismissing unjust enrichment claim where it was undisputed that the relationship between a student and a university was governed by a contract].) Conversely, a plaintiff may pursue restitution on a quasi-contract theory when "performance of an otherwise valid contract has been rendered impossible." (*In re Pepperdine Univ. Tuition & Fees COVID-19 Refund Litig.*, *supra*, 659 F.Supp.3d at p. 1095; see also *Arredondo*, *supra*, 618 F.Supp.3d at pp. 946–948 [denying summary judgment on quasi-contract claim where the plaintiffs had demonstrated the existence of an implied contract, but defendant had shown performance was impossible].)

Here, the court found—and the parties both acknowledge—there was a contract between student appellants and USF regarding their enrollment. The court also did not find that contract unenforceable or invalid. Rather,

17

the court concluded the terms of the contract did not guarantee students exclusive in-person instruction during a global pandemic.  Because a valid and enforceable contract existed between student appellants and USF regarding their enrollment, albeit without the terms they sought, appellants are precluded from pursuing their quasi-contract claim.

## B.  Promissory Estoppel

In support of their promissory estoppel claim, appellants rely on the same evidence cited in connection with their breach of contract claim.  Again, appellants contend this evidence raises a triable issue of fact as to whether USF promised to provide exclusively in-person instruction.  As explained in Part II.A., the record does not reflect any such promise.  Accordingly, the trial court properly granted summary adjudication of this claim.

Moreover, we note "[an] action for promissory estoppel is a claim in equity that substitutes reliance on a promise for consideration 'in the usual sense of something bargained for and given in exchange.'  [Citation.]  If actual consideration was given by the promisee, promissory estoppel does not apply." (*Fleet v. Bank of Am. N.A.* (2014) 229 Cal.App.4th 1403, 1412–1413.)  Here, appellants provided actual consideration—i.e., payment of tuition.  Their promissory estoppel claim also fails on that basis.[5]

## DISPOSITION

The trial court's order granting USF's motion for summary adjudication is affirmed.  USF is entitled recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[5]      Appellants assert triable issues of fact remain as to various defenses asserted by USF.  We need not reach these issues, including the question of appellant Kaiser's standing, because we conclude appellants failed to establish triable issues of fact as to their claims.

18

_____

Petrou, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Rodríguez, J.


A165976;A166231/*Berlanga et al., v. University of San Francisco*

Trial Court:        San Francisco County Superior Court

Trial Judge:        Hon. Andrew Y.S. Cheng

Counsel:            Keller, Fishback & Jackson, Stephen M. Fishback, Tenny
                    Mirzayan; Bursor & Fisher, L. Timothy Fisher, Frederick J.
                    Klorczyk III, and Brittany S. Scott; The Arkin Law Firm,
                    Sharon J. Arkin for Plaintiffs and Appellants.

                    Holland & Knight, Vito A Costanzo, Kristina S. Azlin,
                    Stacey H. Wang, and Qian Shen, for Defendant and
                    Respondent.